UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RANDALL J STRANDQUIST,<br><br>          Plaintiff,<br><br>   v.<br><br>WASHINGTON STATE DEPARTMENT<br>OF SOCIAL AND HEALTH SERVICES;<br>WENDY LONG,<br><br>          Defendant. | Case No. 3:23-cv-05071-TMC<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT *DAUBERT* MOTION |

This case arises from the termination of Plaintiff Randall J. Strandquist's employment with Defendant Washington State Department of Social and Health Services (DSHS) after he declined to be vaccinated against COVID-19. Before the Court is Defendants' joint *Daubert* motion (Dkt. 36). Defendants ask the Court to exclude the testimony of Plaintiff's expert witnesses Lisa Brock and Dr. Harvey Risch. For the following reasons, the motion is GRANTED in part and DENIED in part.

**I.    BACKGROUND**

Strandquist initiated this case on January 27, 2023, Dkt. 1, and amended his complaint on October 2, 2023. Dkt. 20. Strandquist was employed at Eastern State Hospital (ESH or

"Eastern") as a forensic evaluator, where he conducted psychological evaluations of individuals with serious or long-term mental illnesses. Dkt. 34 ¶ 2–3. Strandquist requested a religious exemption to the COVID-19 vaccine mandate and was offered an accommodation of reassignment to a telework position after DSHS concluded it could not accommodate him in his own position. Dkt. 32-4; Dkt. 35-1. He was separated from Eastern after declining the reassignment and refusing to get vaccinated. Dkt. 42 at 23–24. Defendants are DSHS and Wendy Long, Senior Director of the Human Resources Division at DSHS. Dkt. 20 ¶¶ 2–3.

Strandquist alleges claims under the U.S. Constitution, Washington State Constitution, Title VII, and state laws against all Defendants. *Id.* ¶¶ 59–164. On August 20, 2024, Defendants moved for summary judgment on all claims and filed the instant motion asking the Court to exclude the testimony of Strandquist's experts. Dkt 31; Dkt. 36. Strandquist moved for partial summary judgment, Dkt. 38, attaching declarations from Dr. Alan Risch and Lisa Brock in support of his motion. Dkt. 40; Dkt. 41. On September 10, 2024, Strandquist filed additional declarations from Dr. Risch and Ms. Brock supporting his opposition to Defendants' summary judgment motion. Dkt. 48-1; Dkt. 50-1.

Dr. Alan Risch is a Professor Emeritus of Epidemiology at Yale School of Public Health who submitted two expert reports on the efficacy of COVID-19 vaccines and vaccine mandates. *See* Dkt. 40; Dkt. 50. Dr. Risch's first report was signed on May 19, 2024 and filed in support of Strandquist's partial summary judgment motion. Dkt. 40. In his first report, Dr. Risch provided his opinions on the role of post-infection natural immunity in controlling the spread of COVID-19, the frequency of breakthrough infections among vaccinated individuals, and the efficacy of using COVID-19 vaccines to prevent transmission. *See generally* Dkt 40-1. He cited CDC articles and case studies as evidence to support his opinions about the likelihood of breakthrough infections occurring among fully vaccinated healthcare workers and asserted that "it is clear that

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT DAUBERT MOTION - 2

at the time the Washington state and ESH employee COVID-19 vaccine mandates were enforced in 2021, appreciable risks of breakthrough infections were evident, making vaccines substantially imperfect for the supposed role of reducing infection risk." Dkt. 40-1 at 6–7. Dr. Risch also concluded that the "ESH vaccination mandate did not recognize documented natural immunity [making] the mandate both not narrowly tailored and arbitrary in this lack of recognition." *Id.* at 11.

In the second report, prepared as part of a declaration in opposition to Defendants' summary judgment motion, Dr. Risch referenced the opinions on breakthrough infections from his earlier report, and applied those opinions to evaluate the risk of COVID-19 breakthrough infections at Eastern. Dkt. 50-1 at 1. Dr. Risch opined:

> CDC empirical data from 2021 showed that post-vaccination breakthrough COVID-19 infections in that time period occurred in at least 4.6% of vaccinated individuals. In the DSHS Eastern State Hospital where Plaintiff worked, the fraction of staff seeking medical or religious exemptions from the mandate was 3.65%, less than this 4.6% number. The total DSHS staff exemption fraction was 3.84%, again less than the 4.6%. Thus, even if all exemption-requesting staff were left to work without any accommodation changes, and even if every one of them got Covid-19 in this time period, the infection burden in total among these unvaccinated staff would have been less than the infection burden in total among the great majority of staff who had been vaccinated.

*Id*. Dr. Risch compared the infection load among the employees at Eastern who were terminated or accommodated, and CDC estimates of employees at Eastern who would have experienced breakthrough infections:

> Thus, among these vaccination fractions of 96.35% and 96.16%, the CDC data estimate that 4.43% of Eastern State Hospital employees and 4.42% of DSHS employees in total would have had Covid-19 post-vaccination breakthrough infections, i.e., COVID-19 infections through vaccine failure during 2021. In comparison, only 3.65% of Eastern State Hospital terminated or accommodated employees and 3.84% of DSHS terminated or accommodated employees in total were not vaccinated. Even if 100% of those unvaccinated employees had gotten Covid during the same period, the infection load among the unvaccinated would have been less than the infection load among the vaccinated.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT DAUBERT MOTION - 3

*Id.* at 2–3. Dr. Risch also discussed whether mRNA products should be categorized as vaccines based on his opinion that unlike "existing vaccines in human commercial use," mRNA-type COVID-19 vaccines "do not stimulate the immune system directly." Dkt. 50-1 at 5. Dr. Risch opined that given the different way mRNA products work in the body, these vaccines would not satisfy "the four-part scrutiny principles laid out by Justice Harlan in the Jacobson (1905) decision." *Id*. Dr. Risch concluded his report by responding to Defendants' arguments on their accommodation process, asserting that "Defendants did not implement the Proclamation [mandating vaccines for Washington healthcare workers], they went beyond the Proclamation in not granting suitable accommodations to approved religious exemption requests." *Id.* at 11.

Lisa Brock has worked in Human Resource (HR) Management since 1984 and submitted two expert reports on implementing accommodations procedures. *See* Dkt. 41-1; Dkt. 48-1. Brock testified that her professional opinion is "based on [her] training and [her] 40 years of experience in employment law and HR practices, predominantly serving healthcare services." Dkt. 41 ¶ 4. For the first report, Brock reviewed Strandquist's complaint, DSHS Administrative Policy No. 18.25 (Affirmative Action and Religious Discrimination), DSHS Administrative Policy No. 18.26 (Disability Reasonable Accommodation), and an email from Long to Strandquist dated September 8, 2021. Dkt. 41-1 at 1. Brock included a step-by-step best practices guide published by the Society for Human Resources Management (SHRM) on handling requests for medical or religious exemptions to a vaccine requirement. Dkt. 41-1 at 2–8. For each step, Brock provided a practical application, where she discussed the processes developed at her former employers such as Overlake Medical Center and Clinics. *Id.* Brock then assessed whether DSHS followed similar processes to those described in her practical application section. *Id.* Brock concluded that based on her experiences in other health care settings, DSHS's actions did not conform to the best practices. *Id.*

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT DAUBERT MOTION - 4

Brock's second report addressed three arguments Defendants made in their summary judgment motion. Dkt. 48-1. First, Brock opined that DSHS should have asked Strandquist for additional information in October 2021 if it had any concerns about whether Strandquist had a sincerely held religious belief. Dkt. 48-1 at 2. Second, Brock discussed DSHS's reassignment accommodation and wrote, "as a Human Resources professional that has worked in healthcare over 30 years, I struggle to understand how a 'good faith' effort could result in offering a highly trained and educated physician a Financial Analyst position." *Id.* Third, Brock explained that at Overlake, she had accommodated medical professionals with religious exemptions even if they were involved in direct patient care. *Id.* at 2–3. Brock concluded, "I believe there were available and appropriate accommodations available that could have and should have been offered Dr. Strandquist." *Id.* at 3.

Defendants filed this motion on August 20, 2024, seeking to exclude Dr. Risch and Lisa Brock as witnesses. Dkt. 36. Strandquist filed a response to the motion on September 10, 2024, Dkt. 47, and Defendants replied. Dkt. 55.

## II.   DISCUSSION

A.   **Federal Rules of Evidence 702 and *Daubert***

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Testimony is permitted if it is both relevant and reliable. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc) (citing Fed. R. Evid. 702), *overruled on other grounds by United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020). Before trial, "[t]he trial court acts as a 'gatekeeper' to exclude expert testimony that" does not meet these standards. *Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1193, 1201 (D. Nev. 2008) (quoting *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147 (1999)).

Expert testimony is relevant if it "will help the trier of fact to understand the evidence or to determine a fact in issue." *Daubert v. Merrell Dow Pharms., Inc. ("Daubert I")*, 509 U.S. 579, 591 (1993) (citing Fed. R. Evid. 702(a)); *see also Daubert v. Merrell Dow Pharmaceuticals ("Daubert II")*, 43 F.3d 1311, 1315 (9th Cir. 1995) (relevant evidence is that which "logically advances a material aspect of the proposing party's case"), *cert. denied*, 516 U.S. 869 (1995).

Expert testimony is reliable if it is "based on sufficient facts or data," "is the product of reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(b, c, d). More generally, evidence is reliable "if the knowledge underlying it 'has a reliable basis in the knowledge and experience of [the relevant] discipline.'" *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006) (quoting *Kumho Tire*, 526 U.S. at 149). In *Daubert*, the Supreme Court set out several factors that courts may consider in determining reliability:

> (1) whether a scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error and the existence and maintenance of standards controlling the techniques operation; and (4) whether the technique is generally accepted.

*Neal-Lomax*, 574 F. Supp. 2d at 1201 (citing *Daubert I,* 509 U.S. at 593–94). However, these factors do not constitute a "definitive checklist or test," *see Daubert I*, 509 U.S. at 593, and "[i]n other cases, the relevant reliability concerns may focus upon personal knowledge or experience." *Kumho Tire*, 526 U.S. at 150. Nor do the *Daubert* factors "necessarily apply even in every instance in which the reliability of scientific testimony is challenged." *Id.* at 151. Rather, "[t]he inquiry under Rule 702 is a 'flexible' one, and the district court has 'the discretionary authority . . . to determine reliability in light of the particular facts and circumstances of the particular case.'" *Youngevity Int'l v. Smith*, No. 16-CV-704-BTM-JLB, 2019 WL 2918161, at *12 (S.D. Cal. July 5, 2019) (quoting *Kumho Tire*, 526 U.S. at 158); *see also Hangarter v.*

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT DAUBERT MOTION - 6

*Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) ("[A] trial court not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." (internal quotations omitted)).

"Generally, an inquiry under Rule 702 examines the expert's testimony as a whole." *United States v. W. R. Grace*, 504 F.3d 745, 762 (9th Cir. 2007). The proponents of expert testimony bear the burden of establishing its admissibility over the objections of the opposing party by a preponderance of the evidence. *City of Seattle v. Monsanto Co.*, No. C16-107-RAJ-MLP, 2023 WL 4014294, at *4 (W.D. Wash. June 15, 2023) (citing *Daubert I*, 509 U.S. at 592 n.10). District courts "must keep in mind Rule 702's broad parameters of reliability, relevancy, and assistance to the trier of fact." *Sementilli v. Trinidad Corp.*, 155 F.3d 1130, 1134 (9th Cir. 1998) (internal quotations omitted).

**B.    *Daubert* Motion**

    *1.    Dr. Risch's Testimony*

        a.    Reliability

Defendants do not challenge the reliability of Dr. Risch's testimony. *See* Dkt. 36. Their motion to exclude Dr. Risch is based solely on the relevance prong of Rule 702.

        b.    Relevancy

Defendants ask the Court to exclude Dr. Risch's testimony because his reports are not relevant under FRE 702 or *Daubert*. Dkt. 36 at 11. Defendants argue that "Dr. Risch's Report is nothing more than an after-the-fact facial challenge to the science behind the Proclamation [mandating vaccination for healthcare workers] itself." *Id.*; *see* Dkt. 41 at 2. They assert that Dr. Risch questions the motivation behind the Proclamation's vaccine mandate rather than focusing on the "pertinent inquiry" which is whether allowing Strandquist "to continue working in his public facing position, while unvaccinated and using only PPE for his own protection and

the protection of others, was an undue hardship." Dkt. 36 at 11–12. In their reply, Defendants reiterate that "Dr. Risch offers no opinion on the safety of PPE/masking/distancing," and since "his opinions on vaccine efficacy are not the 'pertinent inquiry' regarding Plaintiff's request for accommodation to use those measures," Dr. Risch's testimony should be excluded as irrelevant. Dkt. 55 at 6.

The Court agrees that Dr. Risch's testimony opining on the efficacy of COVID-19 vaccines generally, the role of natural immunity, and the Governor's Proclamation requiring vaccination should be excluded for lack of relevance. *See* Dkt. 40-1 at 2–11; *Pilz v. Inslee*, No. 3:21-CV-05735-BJR, 2022 WL 1719172, at *3–8 (W.D. Wash. May 27, 2022), aff'd, No. 22-35508, 2023 WL 8866565 (9th Cir. Dec. 22, 2023). Facial challenges to the Proclamation have been rejected, *see id.,* and Strandquist has repeatedly conceded in briefing and oral argument that he is not challenging the vaccine mandate as a whole—only how its procedures were applied to him. *See, e.g.*, Dkt. 52 at 11–12. Dr. Risch's opinions on the efficacy of the vaccine mandate will not assist the "trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).

In addition, Dr. Risch's conclusions about whether Defendants provided a reasonable accommodation or established undue hardship must also be excluded. *See* Dkt. 50-1 at 5–11. While Federal Rule of Evidence 704(a) states that "[a]n opinion is not objectionable just because it embraces an ultimate issue," the Ninth Circuit has held "[c]onsistent with Rule 704(a), this court has repeatedly affirmed that 'an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law.'" *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (quoting *Hangarter*, 373 F.3d at 1016); Fed. R. Evid. 704(a). "This prohibition of opinion testimony on an ultimate issue of law recognizes that, 'when an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision,

but rather attempts to substitute the expert's judgment for the jury's.'" *Id.* (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)).

If an expert witness uses terms that have a specialized meaning in the law and "represent an attempt to instruct the jury on the law, or how to apply the law to the facts of the case," the testimony is an impermissible legal conclusion. *Diaz*, 876 F.3d at 1198–99. Dr. Risch opined that Defendants could have provided a "reasonable accommodation" that would allow Strandquist to continue in his position using personal protective equipment (PPE) and Defendants failed to show that the accommodation created "undue hardship." Dkt. 50-1 at 5–11. Terms such as "reasonable accommodation" and "undue hardship" have a "separate, distinct, and specialized meaning in the law different from that present in the vernacular." *Id.* at 1198 (quoting *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006)); *see* Dkt. 50-1 at 5–13. Since the testimony draws legal conclusions that should be left to the jury, the Court excludes these portions of Dr. Risch's expert reports.

But the Court will not exclude all of Dr. Risch's testimony. In his first report, Dr. Risch disclosed opinions about the risk of breakthrough infections even among vaccinated individuals. Dkt. 40-1 at 5–7. Defendants have not challenged the reliability of these opinions. In his declaration opposing Defendants' summary judgment motion, Dr. Risch explained how those opinions suggest that the theoretical transmission rate of COVID from a small number of unvaccinated employees at Eastern wearing PPE would be lower than from a larger vaccinated group of workers given the rate of breakthrough infections. Dkt. 50-1 at 1–3. Specifically, Dr. Risch opined that based on CDC data from 2021, an estimated 4.43% of total Eastern employees would have had post-vaccination breakthrough infections. *Id.* at 2. But since only 3.65% of Eastern employees were terminated or accommodated based on religious objections to the vaccine, "even if 100% of those unvaccinated employees had gotten Covid during the same

time period, the infection load among the unvaccinated would have been less than the infection load among the vaccinated." *Id.* at 2–3. This testimony is relevant because it goes to the parties' factual dispute as to whether permitting Strandquist to continue working unvaccinated using PPE created such a risk to health and safety that it constituted an undue hardship for Defendants. *See Chavez v. San Francisco Bay Area Rapid Transit Dist.*, --- F. Supp. 3d ---, 2024 WL 3334741, at *11 (N.D. Cal. June 21, 2024) (explaining that the case would proceed to trial on undue hardship analysis because "parties have each mustered evidence supporting their competing views on undue hardship and the extent to which BART undertook the necessary individualized analysis"). This portion of Dr. Risch's opinions directly addresses the "pertinent issue" that Defendants raise. *See* Dkt. 36 at 11–12. It is therefore relevant under *Daubert* and will not be excluded.

      2.    *Lisa Brock's Testimony*

         a.  Reliability

Defendants seek to exclude Brock as a witness because her testimony is unreliable. Dkt. 36 at 6; Dkt. 55 at 2. Defendants assert that Brock's opinions are not scientific because they "depend solely [on] a general background in Human Resources." Dkt. 36 at 6. Instead of citing to peer reviewed materials or establishing a factual foundation for her opinions, Defendants argue that Brock relies primarily on her experiences at Overlake and anecdotal evidence from other employers. *Id.* at 6–9. Strandquist responds that Brock is a "30-year veteran of Human Resources management for health care providers" and "bases her report on SHRM guidance on 'How to Handle an Employee's Request for a Religious or Medical Accommodation to a Vaccine Requirement.'" Dkt. 47 at 6–7.

"The reliability determination focuses on the scientific validity of the principles and methodology used by the expert." *Arjangrad v. JPMorgan Chase Bank*, N.A., No. 3:10-CV-

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT DAUBERT MOTION - 10

01157-PK, 2012 WL 1890372, at *4 (D. Or. May 23, 2012) (citations omitted). "When the testimony concerns 'non-scientific' issues, the reliability inquiry of 'the *Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the *knowledge* and *experience* of the expert, rather than the methodology or theory behind it.'" *Erwin v. OBI Seafoods, LLC*, No. 2:22-CV-00893-JHC, 2024 WL 553697, at *2 (W.D. Wash. Feb. 12, 2024) (citing *Hangarter*, 373 F.3d at 1017). When a witness relies primarily on experience, "then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.* at *2. (citing Fed. Civ. R. P. 702 Committee Notes on Rules—2000 Amendment).

      Brock's expert testimony does not meet the reliability threshold. In *Moussouris,* the district court persuasively explained that "an expert cannot rely on the mere fact of his experiences with respect to human resources matters to support his conclusion." *Moussouris v. Microsoft Corp.*, 311 F. Supp. 3d 1223, 1246–47 (W.D. Wash. 2018) (internal quotations and citations omitted). While Brock lists out a step-by-step best practice guide from SHRM for responding to vaccine mandate accommodations, she relies exclusively on her personal experiences with different employers to reach the conclusions in the report. *See* Dkt. 41-1 at 3–8. For example, the evidence Brock presents to show that Strandquist was not given the opportunity to engage in an interactive accommodations process is that "Overlake did not terminate employees that were not vaccinated October 18, 2021. They were placed on unpaid administrative leave for 3 months." *Id.* at 8.

      In addition, Brock's testimony does not show a methodological nexus between her experiences and conclusions. *See Erwin*, 2024 WL 553697, at *3. Nor is it based on sufficient facts or data. *See Moussoris*, 311 F. Supp. 3d at 1244–45. Her report states only the differences

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT DAUBERT MOTION - 11

between policies of her former employers and Defendants' accommodation procedures. *See* Dkt. 41-1 at 3–8. For instance, Brock opined that at Overlake, "once we decided a disability or religious exemption existed, we had to decide upon a reasonable accommodation. A variety of accommodations were considered. In the scope of Overlake's operations, we did not believe providing PPE or testing was an undue hardship." *Id.* at 6. Brock then concluded that she "sees no evidence of an undue hardship evaluation" conducted by DSHS because "[m]ost [] healthcare employers found it was not an undue hardship to accommodate disability/medical and religious exemptions through PPE and testing." *Id.* at 7. But the scope of Brock's review of the evidence in the case was so extraordinarily limited—consisting only of the Plaintiff's complaint, one email, and two administrative policies—that it cannot reliably support her opinions. Although expert witnesses may rely on competing versions of contested facts, the proponent of their testimony must still establish that the testimony "is based on sufficient facts or data" for the witness to form a reliable opinion. Fed. R. Evid. 702(b).

Ultimately, Strandquist does not demonstrate that Brock's opinions are based on sufficient facts or data or "are the product of reliable principles and methods," and "[t]his subjective conclusory approach cannot reasonably be assessed for reliability and is plainly insufficient under *Daubert*." *Arjangrad*, 2012 WL 1890372, at *5 (internal citation omitted) (finding the expert witness unreliable because he "never explains how his experience performing discrimination investigations or his expertise advising employers and HR professionals led him to understand and define generally accepted standards of HR investigation practices"); *see Li v. Ne. Univ.*, No. 2:22-CV-00444-LK, 2023 WL 3722227, at *25 (W.D. Wash. May 30, 2023) ("The Court is not suggesting that Dr. Blanck must map out every single inferential step; however, he must at some point articulate a coherent explanation as to why his previous studies and experience lead to his conclusions.").

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' JOINT DAUBERT MOTION - 12

Even when liberally construing FRE 702 in favor of admissibility, the Court finds that Brock's testimony lacks support from sufficient facts or data and fails to sufficiently specify the method by which she reached her conclusions. *See Moussouris*, 311 F. Supp. 3d at 1246. Because Brock's testimony does not satisfy the standard for reliability under *Daubert*, the Court grants Defendants' motion and excludes Brock's testimony.

    b. Relevancy

Defendants also seek to exclude Brock's testimony on relevancy grounds. Dkt. 36 at 10. Defendants argue that Brock's testimony "will not assist the trier of fact in understanding the evidence or determining a fact at issue" because "concepts of reasonable accommodations and undue hardship are within every jury member's understanding." *Id.* Having found that Brock's expert testimony is unreliable, the Court excludes her testimony and declines to address this portion of the *Daubert* test. *See Erwin*, 2024 WL 553697, at *3 n.3 (declining to evaluate the relevance prong after the Court found the expert witness testimony to be unreliable).

### III.  CONCLUSION

For the foregoing reasons, Defendants' joint *Daubert* motion is GRANTED IN PART AND DENIED IN PART as follows:

- The motion to exclude the testimony of Dr. Risch is DENIED only as to testimony regarding risk of COVID transmission from breakthrough infections among vaccinated individuals and the comparable risk of transmission from unvaccinated employees with religious exemptions.

- The motion to exclude the testimony of Dr. Risch is otherwise GRANTED because the remainder of his opinions are either not relevant or express impermissible legal conclusions.

- The motion to exclude the testimony of Lisa Brock is GRANTED.

Dated this 30th day of October, 2024.

Tiffany M. Cartwright
United States District Judge