UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RANDALL J STRANDQUIST,

               Plaintiff,

   v.

WASHINGTON STATE DEPARTMENT

OF SOCIAL AND HEALTH SERVICES;

WENDY LONG,

             Defendant.

Case No. 3:23-cv-05071-TMC

ORDER ON MOTIONS FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

In August 2021, Washington Governor Jay Inslee issued Proclamation 21-14 ("the Proclamation"), which required all state agency workers be fully vaccinated against the COVID-19 virus. To comply with the Proclamation, Defendant Washington State Department of Social and Health Services (DSHS) instituted a vaccine mandate for its employees. Under this mandate, and consistent with the Proclamation, employees could seek exemption from the vaccination requirement based on their sincerely held religious beliefs. In line with state and federal laws, state agencies were required to reasonably accommodate employees' religious practices when doing so did not create undue hardship.

Plaintiff Randall J. Strandquist was employed by DSHS at Eastern State Hospital as a forensic evaluator. Strandquist alleges that his sincerely held religious belief conflicted with receiving the COVID-19 vaccine, and Defendants DSHS and Wendy Long, Senior Director of the Human Resources Division at DSHS, could have reasonably accommodated him by allowing Strandquist to continue working while using personal protective equipment (PPE) and COVID testing as precautions. Strandquist further alleges that DSHS's offer to reassign him to a lower-paying telework position was not a reasonable accommodation and his refusal to accept the reassignment led to his termination. Finally, Strandquist contends that the actions of DSHS and Long violated the U.S. and Washington Constitutions in various ways. Having considered the briefing, oral argument, governing law, and the balance of the record, the Court GRANTS IN PART AND DENIES IN PART Defendants' motion for summary judgment and DENIES Strandquist's motion for partial summary judgment.

## II.    BACKGROUND

### A.    Strandquist's Employment at Eastern State Hospital

Eastern State Hospital ("Eastern" or ESH) is a 375-bed inpatient psychiatric hospital that "provides evaluation and inpatient treatment for individuals with serious or long-term mental illness that have been referred to the hospital through a behavioral health organization, the civil court system—where individuals have received a civil court order for involuntary treatment—or through the criminal court system." Dkt. 34 ¶ 2. For the relevant period, Strandquist was employed at Eastern as a forensic evaluator. *Id.* ¶ 3. His responsibilities included responding to court orders for psychological evaluations with respect to competency, insanity, and state of mind at the time of a crime. Dkt. 32-1 at 5. Strandquist typically conducted evaluations on the hospital ward or in the jail. *Id.* at 7–8. Strandquist's duties also involved testifying in court regarding his forensic reports and answering questions for defense counsel. *Id.* at 6; Dkt. 34 ¶ 3.

When the COVID-19 pandemic hit in February 2020, DSHS began restricting employees from entering Eastern. Dkt. 32-1 at 9. Strandquist was allowed to continue working in the facility because he was deemed a mandated worker, and he carried a letter with him from DSHS verifying this status. *Id.*; Dkt. 34 ¶ 5. Strandquist believed he was designated as a mandated worker because he had "time-sensitive court orders that needed to be addressed" and "anybody that was involved in direct care of patients was deemed essential." Dkt. 32-1 at 10. There is evidence that Strandquist may have been able to perform some of his duties through telehealth. Dkt. 42 at 2. It is undisputed, however, that at least some of Strandquist's duties required in-person interactions. *See* Dkt. 32-1 at 11; Dkt. 34 ¶¶ 3–4.

**B.      Washington State COVID-19 Vaccination Mandate**

Following the Governor's Proclamation, on September 3, 2021, Washington State's Office of Financial Management (OFM) and the Washington Federation of State Employees (WFSE) issued a Memorandum of Understanding (MOU) that incorporated the Proclamation's vaccination requirements into its collective bargaining agreement. Dkt. 32-2; Dkt. 32-3. The MOU provided the following procedure for religious exemptions: First, employees needed to inform their supervisor or Human Resource representative about seeking a religious exemption either orally or in writing as soon as possible. Dkt. 32-3 at 2. While requests could be received up to the deadline of October 18, 2021, agencies and employees were encouraged to submit necessary materials no later than September 13, 2021. *Id.* Second, agencies would determine whether the employee was eligible for an exemption and the final form of accommodation to be provided. *Id.* at 3. Third, if an accommodation was not available for an employee with an approved religious exemption, the employee would be subject to a non-disciplinary separation. *Id.* Strandquist was a member of WFSE and aware he would need to comply with the vaccine mandate procedures. Dkt. 32-1 at 14, 16–17.

**C.      DSHS's Religious Exemption Procedures**

> *1.      Strandquist submits a religious exemption request*

Using guidance from State Human Resources, DSHS developed a two-part Religious Exemption Request Form. Dkt. 35 ¶ 4. Form 1 was an initial intake questionnaire for employees to provide threshold information and Form 2 asked employees to elaborate on the religious beliefs that formed the basis of their exemption request. *Id.* Once both forms were received, DSHS began its evaluation by determining whether the employee had proffered a sincerely held religious belief. *Id.* ¶ 5. Then, DSHS reviewed the employee's job description and met with the Appointing Authority (the supervisor or department head) to assess possible accommodations based on the employee's specific job duties. *Id.*

On August 30, 2021, Strandquist submitted his Religious Exemption Request Forms to DSHS. Dkt. 32-4. Nine days later, DSHS sent Strandquist an accommodation decision letter. Dkt. 35-1. The letter informed Strandquist that "DSHS has determined your request for a religious exemption is based on a sincerely held religious belief and that it prevents you from being vaccinated against COVID-19." *Id.* The letter also provided DSHS's conclusion that given his job functions, reassignment was the only reasonable accommodation available:

> In considering your request for accommodation, DSHS evaluated the essential functions of your position as well as business requirements for workplace safety. Performing the essential functions of your position unvaccinated poses a threat to the health or safety of yourself and others in the workplace.
>
> The Center for Disease Control and the Washington State Department of Health (DOH) have determined that COVID-19 is highly contagious and potentially fatal, especially to those who are unvaccinated. In recent months, DOH reports COVID-19 cases and hospital admission continue to rise due to the Delta variant and vaccination is critical to manage disease transmission.
>
> These facts manifestly support a finding that a significant risk of substantial harm is posed by having someone present in the work place who may be infected with COVID-19, with or without symptoms.

After carefully reviewing your job classification, essential functions, and working environment, we have determined the only reasonable accommodation we can offer is the possibility of a reassignment. There are no other accommodations for your position available which sufficiently mitigate or eliminate the risk associated with having an unvaccinated employee performing the essential functions of your position.

*Id.* at 2–3. In making the reassignment determination, Human Resources had contacted Dr. Kinlen, Strandquist's supervisor and Appointing Authority. Dkt. 34 ¶ 6. Dr. Kinlen testified that he and the accommodations team "considered critical aspects of Dr. Strandquist's job, including (1) whether he provided direct patient services; and (2) whether his job was public facing." *Id.* Both considerations ultimately led DSHS to conclude that Strandquist could not be accommodated in his current position without requiring he get vaccinated. *Id.* ¶¶ 6–7. DSHS did not provide any explanation for its conclusion that no possible accommodations in Strandquist's position would "sufficiently mitigate or eliminate the risk associated with having an unvaccinated employee performing the essential functions of your position." Dkt. 35-1 at 3.

On September 9, 2021, Strandquist wrote to Long, asking why he could not be accommodated in his own position by using masks, testing, and other precautions he had used prior to the vaccine mandate. Dkt. 42 ¶ 11. Strandquist did not receive a response, but on September 24, 2021, Long sent out an email to all state agency workers about COVID-19 vaccination verification and accommodation request deadlines. *Id.*; Dkt. 35-2.

### 2. Strandquist rejects the reassignment accommodation

Strandquist submitted a request for reassignment. Dkt. 32-1 at 12; Dkt. 35 ¶ 9. He received an email from Andrea Detlefsen, a Human Resources Business Partner at DSHS, on October 12, 2021, informing him of a reassignment option as Management Analyst 5. Dkt. 33 ¶ 4; Dkt. 33-2 at 2. The Analyst's annual salary was approximately $50,000 lower than Strandquist's salary as a forensic evaluator. Dkt. 42 ¶ 13. Long testified that DSHS had looked for open, funded roles that were within Strandquist's salary range, but none existed that could be

performed through "100% remote work." Dkt. 57 ¶ 3; Dkt. 35 ¶ 9. As a result, DSHS identified the Analyst position as the best fit, "given the limited parameters his request required." Dkt. 35 ¶ 10. In Detlefsen's email, she informed Strandquist that she needed a response, either accepting or rejecting the position, within two business days because the Human Resources Division would initiate a separation absent a response. Dkt. 33-1 at 5–6; Dkt. 33-2 at 3.

Two days later, Detlefsen contacted Strandquist about scheduling a time to discuss the reassignment option. Dkt. 33-1 at 5. Strandquist responded, asking if his attorney could attend the call. *Id.* Detlefsen informed him if Strandquist wanted his attorney present, he needed to receive a waiver from WSFE acknowledging that it waived its right to represent Strandquist. *Id.* at 4. Detlefsen provided contact information for WSFE shop stewards and wrote that she needed to know Strandquist's decision by 8:00 AM the next morning. *Id.* That afternoon, on October 14, Detlefsen and Strandquist discussed the reassignment option, but Strandquist did not decide whether to accept the position. Dkt. 33-1 at 2; Dkt. 33-3.

The following day, Strandquist emailed Detlefsen expressing that he did not receive as sufficient answer about why he was "considered dangerous and not allowed to continue working using the PPE and work from home options" he currently had. Dkt. 33-1 at 2. Strandquist wrote, "It is my contention that, if we examine the science, there is no reason why I cannot continue working in my position." *Id.* In her response, Detlefsen summarized their earlier discussion about the accommodations procedure and wrote that she would accept his non-response as a denial. Dkt. 33-3 at 2. Detlefsen informed Strandquist that he had 10 days to be vaccinated or be subject to a non-disciplinary separation. *Id.*

## D.    Termination from Eastern and Subsequent Legal Actions

Strandquist did not submit proof of vaccination and he was separated from Eastern effective October 25, 2021. Dkt. 42 at 23–24. Strandquist was hired by Frontier Behavior Health

in March 2022, where he was granted a religious exemption to the state vaccination requirement for healthcare workers. Dkt. 42 ¶ 31.

Strandquist sued DSHS and Long on January 27, 2023, asserting ten causes of action under the Washington Constitution and Washington law. Dkt. 1 ¶¶ 12–26. On October 2, 2023, Strandquist amended his complaint, removing one cause of action under the Washington Constitution and adding factual allegations along with new claims under the U.S. Constitution and federal law. Dkt. 20. Defendants moved for summary judgment on all claims, arguing that reassignment was a reasonable accommodation given that Strandquist's responsibilities required in-person interactions in judicial and carceral settings. Dkt. 31. Defendants also moved to exclude Plaintiff's proffered experts, Lisa Brock and Dr. Harvey Risch, which the Court has ruled on in a separate order. *See* Dkt. 86. Strandquist moved for partial summary judgment on a Free Exercise claim under the First Amendment and Equal Protection claim under the Fourteenth Amendment. Dkt. 38. In their responsive briefing, Defendants also moved to strike declarations from Cedar O'Donnell and Christine Zampich in support of Strandquist. Dkt. 44; Dkt. 56.

### III.    SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the moving party has the burden of proof at trial (such as a defendant seeking summary judgment based on an affirmative defense) he must demonstrate that no reasonable trier of fact could find against him." *Intelligent Peripheral Devices, Inc. v. SmartPad, Inc.*, No. C95-4479-FMS, 1998 WL 754606, at *2 (N.D. Cal. Oct. 26, 1998) (citing *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)); *see also Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1177 (9th Cir. 2006) (recognizing that a defendant bears the burden of proof at summary judgment with respect to an affirmative defense). A dispute as to a material

fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The evidence relied upon at summary judgment must be able to be "presented in a form that would be admissible in evidence." *See* Fed. R. Civ. P. 56(c)(2). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see also* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony.").

Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presume[d]." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). However, "'[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255). Consequently, "a District Court must resolve any factual issues of controversy in favor of the non-moving party only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan,* 497 U.S. at 888 (internal quotations omitted).

## IV.    DISCUSSION

### A.    Defendants' Motions to Strike

Before the Court proceeds with the substantive claims, it must first address Defendants' motions to strike the Declarations of Cedar O'Donnell and Christine Zampich. *See* Dkt. 44 at 3; Dkt. 56 at 2.  Under Rule 26(a)(1)(A)(i), parties must disclose "the name and, if known, the

address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i); *see McIntire v. Hous. Auth. of Snohomish Cnty.*, No. C22-1757-MLP, 2024 WL 1832952, at *6 (W.D. Wash. Apr. 26, 2024) ("The duty to disclose is ongoing, and parties must supplement this disclosure as new information becomes available."). If a party fails to disclose a witness as required by Rule 26, the party is not permitted to use the witness on a motion unless "failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see Benjamin v. B & H Educ., Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017). District courts have identified factors to assess whether substantial justification and harmlessness exist, which include: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Mut. of Enumclaw Ins. Co. v. Bradford White Corp.*, No. C23-455-MJP, 2024 WL 1659001, at *1 (W.D. Wash. Apr. 17, 2024) (quoting *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022)).

Defendants contend that the Declarations of O'Donnell and Zampich should be excluded because Strandquist did not disclose the witnesses in either his initial disclosures or any other discovery requests as required by Rule 26. Dkt. 45 ¶ 2; Dkt. 58 ¶ 2. Strandquist does not dispute that the witnesses were not timely disclosed. *See* Dkt. 60 at 4–5. The Court turns to evaluate whether Strandquist has demonstrated that non-disclosure of the witnesses is excused because it was substantially justified or harmless.[1] *See* Fed. R. Civ. P. 37(c)(1).

---

[1] In his reply brief, Strandquist addresses only Defendants' motion to strike O'Donnell's Declaration. *See* Dkt. 60 at 4–6. The Court considers this a concession that Zampich's declaration should be stricken, but it would also strike the declaration for the same reasons that apply to O'Donnell.

1      Strandquist first argues that non-disclosure was neither prejudicial nor a surprise to

2   Defendants because O'Donnell's testimony was "duplicative of already produced discovery and

3   foreseeable." Dkt. 60 at 5. He then asserts that Defendants can cure any prejudice by deposing

4   O'Donnell. *Id.* Strandquist next argues that there is no disruption to trial because O'Donnell's

5   testimony "raises no new facts and [D]efendants are already on notice of the ability to work

6   remotely issue." *Id.* Last, Strandquist claims that he did not willfully withhold disclosure of

7   O'Donnell. He explains that a week before filing his summary judgment motion, when he could

8   not reach the witness he had disclosed (Dr. Grant), he "sought out additional witnesses" who

9   could provide similar testimony and found Dr. O'Donnell. *Id.*; *see also* Dkt. 59.[2] Strandquist

10  concludes that based on these factors, the Court should find that the late disclosure of O'Donnell

11  was substantially justified and harmless. *Id.*

12      The Court disagrees. Strandquist's disclosure of two witnesses at the summary judgment

13  stage is prejudicial because it deprives Defendants of the opportunity to serve additional

14  discovery requests and to depose the witnesses. *See Hill v. U.S. Dep't of Homeland Sec.*, 570 F.

15  App'x 667, 669 (9th Cir. 2014). Both witnesses presented assertions about DSHS's practices for

16  remote work, and it is unclear whether their testimony was truly duplicative of Dr. Grant. *See*

17  Dkt. 60 at 5. Strandquist submitted the Declarations on the deadline for filing dispositive

18  motions, long after discovery had closed and only ten weeks before trial is scheduled to begin.

19  *See* Dkt. 39; Dkt. 49; Dkt 63. While Strandquist suggests Defendants can depose O'Donnell

20  now, he made no effort to inform Defendants of his need to identify new witnesses because of

21  Dr. Grant's supposed unavailability or to cure the potential prejudice to Defendants by seeking

22  _____

23  [2] In his declaration, counsel for Strandquist explains that this was based on his "understanding
    that Dr. Grant may have been deceased." Dkt. 59 at 2. He clarified at oral argument that he was
24  simply not able to reach Dr. Grant, and his belief that Dr. Grant may have been deceased was,
    thankfully, incorrect.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 10

1    an extension from the Court or making O'Donnell availability immediately for a deposition. It is

2    costly to set up depositions, and deposing O'Donnell after dispositive motions had already been

3    completed would prejudice Defendants and interrupt trial preparation. *A.T. v. Seattle Sch. Dist.*

4    *No. 1*, No. C22-1140-RSM, 2024 WL 1893495, at *1 (W.D. Wash. Apr. 30, 2024) ("Reopening

5    discovery would substantially delay this case, set for trial in less than 2 months.").

6        Strandquist's argument that the untimely disclosure was substantially justified because of

7    his inability to reach Dr. Grant is also unpersuasive. *See* Dkt. 60 at 5. If an important witness had

8    unexpectedly become unavailable, requiring Strandquist to identify a new witness, Strandquist

9    should have reached out to opposing counsel or the Court immediately to explain the situation

10   and seek relief from existing deadlines. Strandquist also should have disclosed O'Donnell

11   immediately after identifying her as the substitute. Strandquist's decision to instead simply file a

12   declaration from O'Donnell with his motion and seek forgiveness later does not "show that

13   untimely disclosure was outside of Plaintiff's control and justified." *A.T.*, No. C22-1140-RSM,

14   2024 WL 1893495, at *1. Since Strandquist has not shown that his failure to disclose the

15   witnesses was substantially justified or harmless, the Court GRANTS Defendants' motion to

16   strike the Declarations of O'Donnell and Zampich.

**B.    Defendants' Motion for Summary Judgment**

    *1.   The Court dismisses all federal constitutional claims against DSHS and Wendy*
        *Long in her official capacity because Defendants are not "persons" under*
        *Section 1983.*

20       A party asserting federal constitutional violations against the government must bring suit

21   under 42 U.S.C. § 1983. *See Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th

22   Cir. 1992). To state a claim for relief under Section 1983, a plaintiff must show: (1) that he or

23   she suffered a violation of rights protected by the Constitution or created by federal statute, and

(2) that the violation was proximately caused by a *person* acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991) (emphasis added).

To the extent that Strandquist seeks damages against DSHS and Long in her official capacity, those claims are barred by the Eleventh Amendment. *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016). A state agency is not a person for purposes of Section 1983 and cannot be sued for constitutional violations unless it affirmatively waives its sovereign immunity. *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) ("States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes are not 'persons' under § 1983." (citation omitted)). "State officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983." *Arizonans for Off. Eng. v. Ariz.*, 520 U.S. 43, 69 n.24 (1997). Because DSHS and Long in her official capacity are not proper defendants for Section 1983 suits seeking damages, Strandquist's federal constitutional claims against them fail as a matter of law.

It is well established that parties seeking injunctive relief against state officers in their official capacity must bring their suit under *Ex parte Young*, 209 U.S. 123 (1908). *See Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254 (2011). In his opposition brief, Strandquist contends that he has pled claims for injunctive relief against Long because he is seeking reinstatement to his position at Eastern. Dkt. 52 at 13. Despite no mention of reinstatement in his amended complaint, Strandquist argues that his prayer for relief, "such other and further relief that is just and equitable," sufficiently pleads a claim for reinstatement. *See id;* Dkt. 20 at 23. The Court disagrees. An *Ex parte Young* action requires parties to "allege[] an ongoing violation of federal law and seek[] relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002). A catch-all request for just and equitable relief does not sufficiently plead a claim for injunctive relief under *Ex parte Young*.

Defendants' motion for summary judgment on federal constitutional claims against DSHS and Long in her official capacity is GRANTED.

> 2.    *Long is entitled to qualified immunity for federal claims against her in her individual capacity.*

Long argues that she is entitled to qualified immunity for all claims. Dkt. 31 at 13. Qualified immunity is a defense that protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The plaintiff carries the burden to show that the defendant (1) "violated a federal statutory or constitutional right" and (2) "the unlawfulness of their conduct was clearly established at that time." *Moore v. Garnand*, 83 F.4th 743, 750 (9th Cir. 2023) (internal quotations omitted). The Court may analyze these elements in any order "in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, the Court need only consider whether Defendants' conduct violated a clearly established right. *See Moore*, 83 F.4th at 750; *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 969 (9th Cir. 2010) ("We may begin the qualified immunity analysis by considering whether there is a violation of clearly established law without determining whether a constitutional violation occurred.").

 "To determine whether a constitutional right has been clearly established for qualified immunity purposes," the Court "must survey the legal landscape and examine those cases that are most like the instant case." *Krainski*, 616 F.3d at 970 (quoting *Trevino v. Gates*, 99 F.3d 911, 917 (9th Cir.1996)) (citations omitted). While the qualified immunity doctrine does not "require a case directly on point" to show that a right is clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731,

741 (2011). The inquiry is also time-specific, requiring the Court to consider whether the right was clearly established "at the time of the alleged violation." *Moran v. State of Wash.*, 147 F.3d 839, 844 (9th Cir. 1998).

> a. *Strandquist does not establish that Long's actions violated any clearly established right.*

In his reply brief in support of his affirmative partial summary judgment motion, Strandquist argues that the constitutional rights at issue are the Free Exercise Clause and the Fifth Amendment's substantive due process right to bodily autonomy. Dkt. 60 at 10. As support, Strandquist cites *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707 (1981), which involved a state's denial of unemployment compensation benefits to an employee who had resigned for religious reasons, and *Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261 (1990), which involved a hospital's refusal to remove a feeding tube from an individual who was in a persistent vegetative state. *See id*. But these cases are not sufficiently analogous to the facts here to stand for more than general constitutional guarantees and are not instructive in this qualified immunity analysis. *See Gordon v. Cnty. of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) ("Qualified immunity is not meant to be analyzed in terms of a 'general constitutional guarantee,' but rather the application of general constitutional principles 'in a particular context.'").

Here, the question is whether Long's alleged misconduct violated a clearly established constitutional right of which a reasonable person in Long's position would have known. *See Harlow*, 457 U.S. at 818. Strandquist's main allegation is that Long helped implement DSHS's vaccine mandate and is responsible for denying him a religious accommodation. Dkt. 52 at 13. He cites three specific actions: (1) notifying Strandquist about the reassignment determination; (2) failing to respond to an email he and his attorney sent to her; and (3) informing Strandquist

that DSHS would not accommodate him in his current position unvaccinated. Dkt. 20 ¶¶ 11, 16, 30, 45; *see* Dkt. 52 at 20–22.

Even if a reasonable jury could find that DSHS failed to offer Strandquist a reasonable accommodation under Title VII of the WLAD, as discussed later in this Order, Strandquist fails to establish that Long's actions violated any clearly established constitutional right. At the time Long implemented DSHS's vaccine mandate in September 2021, there was no Supreme Court or Ninth Circuit precedent which put her on notice that either the mandate or DSHS's method of implementing it was unconstitutional. *See* Dkt. 52 at 20–22; Dkt 60 at 9–10; *see also, e.g.*, *Bacon v. Woodward*, 2024 WL 3041850, at *1 (9th Cir. June 18, 2024) (upholding facial validity of Proclamation against Free Exercise challenge); *Johnson v. Kotek*, No. 22-35624, 2024 WL 747022, at *3 (9th Cir. Feb. 23, 2024) (qualified immunity bars substantive due process claims against Oregon governor for vaccine mandate); *Armstrong v. Newsom*, No. 21-55060, 2021 WL 6101260, at *1 (9th Cir. Dec. 21, 2021) (qualified immunity bars suits against California governor for his stay-at-home executive order because the order did not violate clearly established law in March 2020). District courts have routinely held that officials are entitled to qualified immunity in similar challenges to public health orders because they were facing an "unprecedented global pandemic," for which there was little if any clearly established precedent. *Sinclair v. Blewett*, No. 2:20-CV-1397-CL, 2024 WL 21434, at *4 (D. Or. Jan. 2, 2024); *see also, e.g.*, *Bojicic v. DeWine*, 569 F. Supp. 3d 669, 692 (N.D. Ohio 2021), aff'd, No. 21-4123, 2022 WL 3585636 (6th Cir. Aug. 22, 2022); *New Mexico Elks Ass'n v. Grisham*, 595 F. Supp. 3d 1018, 1027 (D.N.M. 2022); *Benner v. Wolf*, 2021 WL 4123973, at *5 (M.D. Pa. Sept. 9, 2021).

Furthermore, as a procedural matter, Strandquist raises these claims for the first time at the summary judgment stage. *See* Dkt. 60 at 10. As discussed, *see* Sec. IV.A., Strandquist's Free Exercise and Substantive Due Process claims were not adequately pled. *See Ortiz Lopez v. Town*

1    *of Apple Valley*, 840 F. App'x 1005, 1006 (9th Cir. 2021) (citing *Echlin v. PeaceHealth*, 887 F.3d

2    967, 977–78 (9th Cir. 2018)). The Court now turns to address the constitutional claims

3    Strandquist raised in his amended complaint. *See* Dkt. 20 at 13, 16, 20.

4              b.    *Procedural Due Process*

5         Strandquist contends that he was denied procedural due process because he was not

6    provided a *Loudermill* hearing before he was terminated. Dkt. 20 ¶ 99; Dkt 52 at 22–24; *see*

7    *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). First, Strandquist has not identified

8    clearly established law requiring a *Loudermill* hearing for every employee that was separated due

9    to a generally applicable legal requirement such as the vaccine mandate. To the contrary, the

10   Ninth Circuit has explained that "[t]he notice provided in the Proclamation was . . . sufficient" to

11   satisfy procedural due process challenges to "the substantive rules applied" while implementing

12   the Proclamation, including objections to "what [plaintiffs] considered to be an overly stringent,

13   'sham' approach to accommodations." *Bacon*, 2024 WL 3041850, at *2 (citing *Rea v. Matteucci*,

14   121 F.3d 483, 484–85 (9th Cir. 1997)). That is exactly the type of challenge Strandquist brings

15   here. Second, another court in this District has already concluded that the Proclamation itself,

16   combined with its procedures for applying for exemptions and accommodations, provided the

17   core requirements of "notice and an opportunity to respond" required by *Loudermill*. *Pilz v.*

18   *Inslee*, No. 3:21-cv-05735-BJR, 2022 WL 1719172, at *7 (W.D. Wash. May 27, 2022), *aff'd*,

19   No. 22-35508, 2023 WL 8866565 (9th Cir. Dec. 22, 2023). Long is entitled to qualified

20   immunity from Strandquist's procedural due process claim.

21             c.    *Contracts Clause*

22        The Contracts Clause limits states' abilities to disrupt contractual agreements. U.S.

23   Const., Art. I, § 10, cl. 1; *see Ashley Sveen v. Kaye Melin*, 584 U.S. 811, 819 (2018). Strandquist

24   asserts that Defendants violated the Contracts Clause by interfering with his right to continued

employment. Dkt. 20 at 16–17. To determine whether a plaintiff has successfully stated a claim under the Contracts Clause, the Court applies a two-step test. *See Sveen*, 584 U.S. at 819. To begin, the "threshold issue is whether the state law has operated as a substantial impairment of a contractual relationship." *Id.* (quoting *Allied Structural Steel Co.*, 438 U.S. 234, 244 (1978) (internal quotations omitted)). If the first prong is satisfied, the Court considers whether the "state law is drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose." *Id.* (quoting *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411–412 (1983)) (internal quotations omitted).

Here, Strandquist has not satisfied the first step of the Contracts Clause test. Substantial impairment exists to "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Sveen*, 584 U.S. at 819. Strandquist has not addressed any of these elements and therefore fails to show evidence sufficient to support a claim under the Contracts Clause. *See* Dkt. 52; *Gray v. Washington State Dep't of Transp.*, 3:23-CV-05418-DGE, 2023 WL 6622232, at *6 (W.D. Wash. Oct. 11, 2023). Nor has he shown that Long violated a clearly established right such that she would not be entitled to qualified immunity. *See Gray*, 2023 WL 6622232, at *6.

### d.    Takings Clause

Finally, Long raises the defense of qualified immunity with respect to Strandquist's Takings Clause claim. Dkt. 31 at 17–18. Strandquist does not dispute or otherwise make a takings argument in his opposition brief, and the Court considers the lack of response as abandoning the claim. *See* Dkt. 52; *Gray*, 2023 WL 6622232, at *6 (finding the Plaintiff's failure to address Plaintiff's own takings claim "to be a concession of merit").

The Court also concludes that Strandquist's takings claim fails on other grounds. As a threshold matter, a plaintiff may not bring a takings action against an individual defendant in their individual capacity. *Gray*, 2023 WL 6622232, at *6 n. 7 (citing *Untalan v. Stanley*, No. 219CV07599ODWJEMX, 2020 WL 6078474, at *9 (C.D. Cal. Oct. 15, 2020)). Next, the Takings Clause prohibits the taking of private property for public use without just compensation, but Strandquist does not show how the termination of his employment constitutes the taking of his job for "public use." U.S. Const., Amend. V; *see Kirk v. Hockenberry*, No. 1:14-CV-713, 2016 WL 374433, at *4 (S.D. Ohio Feb. 1, 2016) ("Plaintiff has not cited any cases supporting the notion that the Takings Clause applies to the termination of public employment.").

Strandquist has not identified evidence from which a reasonable jury could conclude that Long, in her individual capacity, violated any of his clearly established constitutional rights. Accordingly, Defendants' motion for summary judgment on federal constitutional claims against Long in her individual capacity is GRANTED.

> 3. *The Court dismisses all Washington Constitutional claims because there is no private right of action for damages provided by the state constitution.*

Defendants argue that all state constitutional claims should be dismissed because the Washington Constitution does not provide a cause of action for damages. Dkt. 31 at 26. The Court agrees. "Washington law contains no counterpart to 42 U.S.C. § 1983," and Washington courts have denied attempts to create a cause of action for damages under the Washington Constitution without guidance from the legislature. *Lubers v. Hinson*, No. 2:23-CV-01396-JHC, 2024 WL 810552, at *2 (W.D. Wash. Feb. 27, 2024) (citing *Blinka v. Washington State Bar Ass'n*, 109 Wn. App. 575, 591, 36 P.3d 1094 (2001)); *Dunn v. City of Seattle*, 420 F. Supp. 3d 1148, 1156 (W.D. Wash. 2019). In his response, Strandquist concedes that he has no right of action for damages, but he asserts his claims are not barred because he is seeking injunctive

relief. Dkt. 52 at 34. As the Court has already concluded, Strandquist did not adequately plead claims for injunctive relief, *see* Sec. IV.B.1. Defendants' motion for summary judgment on all Washington Constitutional claims is GRANTED.

4.    *Failure-to-accommodate under Title VII and WLAD*

Strandquist claims that Defendants failed to accommodate his religious beliefs in violation of 42 U.S.C. §§ 2000e–2(a)(1), and the Washington Law Against Discrimination (WLAD), RCW 49.60. As a preliminary matter, the Court dismisses the failure-to-accommodate claim under Title VII against Long because there is no individual liability under the statute. *See Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir. 1993) ("[I]ndividual defendants cannot be held liable for damages under Title VII.").

Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of" that individual's religion. 42 U.S.C. § 2000e-2(a)(1). An employer must "reasonably accommodate" an employee's religious practice unless such accommodation would impose "undue hardship on the conduct of the employer's business." *Id.* § 2000e(j). Similarly, under the WLAD, employers may not refuse to hire, discharge, bar from employment, or discriminate against in compensation or other terms of employment any person because of their religion. RCW § 49.60.180; *see Kumar v. Gate Gourmet, Inc.*, 325 P.3d 193, 203 (Wash. 2014) (en banc). The WLAD also creates a cause of action for failure to reasonably accommodate an employee's religious practices. *Kumar*, 325 P.3d at 203. To sustain a WLAD failure-to-accommodate claim, Strandquist must put forward evidence supporting substantially the same elements as a Title VII failure-to-accommodate claim. *See id.* Accordingly, the Court analyzes the state and federal claim together.

To successfully establish a Title VII failure-to-accommodate claim, Strandquist "must first set forth a prima facie case that (1) he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected him to an adverse employment action because of his inability to fulfill the job requirement." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004). "Once an employee establishes a prima facie case of failure to accommodate religion, the burden shifts to the employer to show 'either that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship.'" *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1224 (9th Cir. 2023) (quoting *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998)).

     a.   *Strandquist has put forward sufficient evidence to support a failure-to-accommodate claim.*

Defendants concede for the purposes of this motion that a jury could find that Strandquist had a sincerely held religious belief and that those beliefs are the reason why Strandquist refused vaccination. Dkt. 56 at 8. Defendants do not dispute that Strandquist informed Defendants about the belief and conflict by submitting his religious exemption request forms. Dkt. 31 at 7; Dkt. 32-4. Nor do Defendants disagree that Strandquist was separated from Eastern after declining the reassignment option and refusing to get vaccinated. Dkt. 33 ¶ 11. Since Strandquist has established a prima facie case of failure-to-accommodate religion, the Court next evaluates whether Defendants have adequately shown either that they proposed a reasonable accommodation or that they could not reasonably accommodate Strandquist without undue hardship as a matter of law. *See Bolden-Hardge*, 63 F.4th at 1224; *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

1

2

        b.      *Defendants have not established that they offered a reasonable accommodation or that accommodating Strandquist would have been an undue hardship as a matter of law.*

3

    First, Defendants oversimplify their burden by arguing that their offer to reassign

4

Strandquist to a telework position as a Management Analyst shows a "good faith effort" to

5

accommodate him as a matter of law. *See* Dkt. 31 at 20–23. An employer meets this burden

6

"when it demonstrates that it has offered a reasonable accommodation to the employee."

7

*Ansonia*, 479 U.S. at 69; *see Trueblood v. Valley Cities Counseling and Consultation*, No. C23-

8

0269-JLR, 2024 WL 3965926, at *10 (W.D. Wash. Aug. 28, 2024) (rejecting argument that

9

"good faith efforts" may be satisfied "by taking *any* initial steps to consider the employee's

10

requested accommodations, regardless of whether the employer proposed a reasonable

11

alternative accommodation"). The accommodation need not be the one the employee prefers, but

12

it must be "a reasonable resolution of the conflict." *Ansonia*, 479 U.S. at 69. A reasonable

13

accommodation is one that "eliminate[s] the employee's religious conflict" in a way that "will

14

reasonably preserve that employee's employment status, *i.e.*, compensation, terms, conditions, or

15

privileges of employment." *Am. Postal Workers Union, S.F. Local v. Postmaster General*, 781

16

F.2d 772, 776 (9th Cir. 1986); *see Kelly v. Cnty. of Orange*, 101 F. App'x 206, 207 (9th Cir.

17

2004) ("Because Kelly concedes that the transfer eliminated the conflict between her job duties

18

and her religious convictions, our inquiry reduces to whether the accommodation reasonably

19

preserved Kelly's compensation, terms, conditions, and privileges of employment.").

20

    "[T]he determination of whether or not the employment status of the affected employee is

21

reasonably preserved may be objectively assessed by the trier of fact." *Am. Postal Workers*

22

*Union*, 781 F.2d at 777. A reasonable jury could find that the transfer to Management Analyst

23

was not a reasonable accommodation because the $50,000 reduction in Strandquist's annual

24

salary did not reasonably preserve his employment status. To prevail on their summary judgment

motion, then, Defendants must prove as a matter of law that Strandquist's proposed

accommodation—continuing work as a forensic evaluator while using PPE and testing to reduce

his risk of catching or transmitting COVID—created an undue hardship. *See EEOC v. Townley*

*Eng'g & Mfg. Co.*, 859 F.2d 610, 615 (9th Cir. 1988) (holding that when an employer does not

offer a reasonable accommodation, it must either accept the employee's proposal or demonstrate

that the proposal would cause undue hardship).

An employer is not required to reasonably accommodate an employee's religious practice

if doing so would impose "undue hardship on the conduct of the employer's business." 42 U.S.C.

§ 2000e(j). To establish that a particular accommodation would impose undue hardship, "an

employer must show that the burden of granting an accommodation would result in substantial

increased costs in relation to the conduct of its particular business." *Groff v. DeJoy*, 600 U.S.

447, 470 (2023). Courts must "take[] into account all relevant factors in the case at hand,

including the particular accommodations at issue and their practical impact in light of the nature,

size and operating cost of [an] employer." *Id.* at 470–71 (internal quotations omitted). "What

constitutes undue hardship must be determined within the particular factual context of each

case." *Balint*, 180 F.3d at 1054; *see also Groff*, 600 U.S. at 473 (describing undue hardship as a

"context-specific standard"). Where an employer determines a particular accommodation request

would cause undue hardship, the employer must consider alternative accommodation options.

*Groff*, 600 U.S. at 473. Because Defendants bear the burden of proof to establish undue hardship

at trial, to prevail on this defense at summary judgment they must show that "no reasonable trier

of fact could find against" them. *Intelligent Peripheral Devices*, 1998 WL 754606, at *2.

The Court recognizes that the spread of COVID-19 created valid health and safety

concerns that can constitute an undue hardship. *See Doe v. San Diego Unified Sch. Dist.*, 19

F.4th 1173, 1180 (9th Cir. 2021) (citing EEOC guidance explaining that "although Title VII

prohibits employment discrimination based on religion, an employee's request for an exemption from a COVID-19 vaccination mandate can be denied on the ground . . . that such an exemption would pose an undue hardship by burdening the conduct of the employer's business through increasing the risk of the spread of COVID-19 to other employees or to the public.") (internal quotations omitted).

Nevertheless, undue hardship is an affirmative defense that requires Defendants to engage in a fact-specific analysis and prove that permitting Strandquist to work using PPE and testing would not have adequately mitigated safety risks at Eastern. *See Beuca v. Washington State Univ.*, No. 23-35395, 2024 WL 3450989, at *2 (9th Cir. July 18, 2024) (reversing district court's conclusion that allowing unvaccinated healthcare worker to continue working posed an undue hardship as a matter of law and remanding for "a fact-specific inquiry"). Here, Defendants submitted materials from the United States FDA and the CDC showing the effectiveness of COVID-19 vaccines in preventing the spread of the disease. *See* Dkt. 45-2; 45-3; 45-4. Defendants also provided evidence that Strandquist's responsibilities included direct patient interactions in carceral settings. Dkt. 34 ¶ 4. But while this evidence supports COVID-19 vaccines' efficacy, it does not prove as a matter of law that, as Long wrote in her letter to Strandquist, "[t]here are no other accommodations for your position available which sufficiently mitigate or eliminate the risk associated with having an unvaccinated employee performing the essential functions of your position." Dkt. 35-1 at 3. When asked in oral arguments about the specific risks posed by accommodating Strandquist in his position as a forensic evaluator, Defendants pointed only to the Proclamation and argued that if PPE and testing had been sufficient, the Governor would not have issued a vaccine mandate.

The Court finds Defendants' evidence insufficient to obtain judgment as a matter of law. As this Court has noted in other cases, this evidence and argument goes to the established

1    scientific consensus that "vaccination of healthcare workers (and increasing vaccination rates

2    through mandates) improved patient safety." *Zimmerman v. PeaceHealth*, 701 F. Supp. 3d 1099,

3    1114 (W.D. Wash. 2023). But that is not the same as proving, as a matter of law, that any

4    accommodation allowing an unvaccinated healthcare worker with a religious exemption to keep

5    working posed an undue hardship. *Id.* The Proclamation itself expressly allowed for religious

6    accommodations—thus contemplating that some workers would remain unvaccinated without

7    undermining the benefits of achieving mass vaccination through the mandate—and Title VII and

8    the WLAD require that undue hardship be assessed through an individual, fact-specific inquiry

9    of the proposed accommodations and their practical impact on the particular employer. *Goff*, 600

10   U.S. at 470–71.

11          In other cases, litigants have produced evidence to show that they engaged in a fact-

12   specific inquiry to assess whether allowing unvaccinated employees to work in their current

13   positions constituted an undue hardship on the employer. In *Lavelle-Hayden v. Legacy Health*,

14   the district court granted summary judgment in favor of Defendant hospital because it provided

15   evidence that COVID-19 transmission was still occurring even with all the safety measures

16   Defendant took throughout the pandemic. No. 3:22-CV-01752-IM, 2024 WL 3822712, at *15

17   (D. Or. Aug. 14, 2024). Defendant also presented evidence of outside and internal models

18   demonstrating that the "Delta variant would imminently . . . place additional stress on

19   [Defendant's] already overburdened system with a surge of COVID-19 cases and

20   hospitalizations." *Id.* (internal quotations and citations omitted). Defendant further showed that a

21   "higher rate of vaccination generally coincided with a decrease in COVID-19 case counts at

22   Defendant's facilities" which was important given that Defendant's patient population included

23   "many of whom were particularly susceptible to severe illness and death due to their age and/or

24   pre-existing medical conditions, or at a heightened risk of infection." *Id.* at 12, 15.

In *Mohamed v. Full Life Care*, Defendants were granted summary judgment because they "offered evidence that other alternatives—such as periodic testing, masking, or eliminating the in-person component of Mohamed's job—would have either failed to adequately protect Defendants from liability for exposing their clients to harm or would have been cost-prohibitive in the context of Defendants' business." No. C22-1010-KKE, 2024 WL 4371584, at *2 (W.D. Wash. Oct. 2, 2024). And in *Williams v. Legacy Health*, this Court granted the Defendant hospital's summary judgment motion because it submitted extensive evidence showing that "[a]ccommodating hundreds of employees refusing vaccination, who would then pose heightened risks of getting infected and spreading COVID-19 further among Legacy's patient population and staff—in spite of any non-vaccination-based safety protocols—would have imposed substantial costs on Legacy." No. 3:22-cv-06004-TMC, 2024 WL 3993162, at *7 (W.D. Wash. Aug. 29, 2024) (internal citations omitted). "Legacy marshals the specific, unchallenged testimony of epidemiological experts and contemporaneous statistical calculations of risk to prove" it "would have had to contend with increased risks, transmission, hospitalization, and fatalities from COVID-19 in addition to further incapacitation of its staff." *Id.*

In contrast, Defendants have not offered evidence to show how they evaluated the risks Strandquist's proposed accommodation posed or whether accommodating Strandquist in his role "would have been cost-prohibitive in the context of Defendants' business." *Mohamed*, 2024 WL 4371584, at *2. The information in Defendants' accommodation letter is conclusory, and the evidence they have presented at summary judgment suggests they simply made an across-the-board determination that employees who could not perform their job functions through 100% telework could not be accommodated.

In addition, Strandquist raises a genuine factual dispute about the undue hardship imposed on Defendants. *See* Dkt. 47 at 10. In the Court's Order on Defendants' Joint *Daubert*

Motion, it deemed admissible the portion of Dr. Risch's opinions addressing breakthrough

infections among vaccinated workers and the relative risk posed by the small number of

unvaccinated employees with religious exemptions. *See* Dkt. 86. In his declaration opposing

Defendants' summary judgment motion, Dr. Risch applied those opinions (the reliability of

which has not been challenged by Defendants) to estimate that even if all 3.65% of Eastern

employees who were terminated or accommodated had been infected with COVID-19, their

infection load would still be lower than the estimated 4.43% of Eastern employees who would

have experienced post-vaccination breakthrough infections. Dkt. 50-1 at 2–3. This raises a

factual question for the jury as to whether allowing Strandquist to continue working using PPE

and testing created such a significant health risk compared to his vaccinated colleagues that it

could not be reasonably accommodated.

Defendants do not address Strandquist's evidence, nor do they present testimony refuting

Dr. Risch's opinions. *See generally* Dkt. 56. Viewing the evidence in the light most favorable to

Strandquist, a reasonably jury could reject Defendants' undue hardship defense. The Court

therefore DENIES Defendants' motion for summary judgment on the failure-to-accommodate

claim against DSHS under Title VII and all Defendants under the WLAD.

     5.     *"Perceived Disability" Claim under the WLAD*

Strandquist asserts that Defendants also violated the WLAD by terminating his

employment based on his "perceived physical disability" as an unvaccinated person. Dkt. 20

¶¶ 59–70. Defendants argue that vaccination status is not a "perceived disability" because the

mandate required all state employees to be vaccinated or receive an exemption, and therefore the

policy did not "hinge on any assessment of disability or perceived impairment." Dkt. 31 at 29;

*Jorgenson v. Conduent Transp. Sols., Inc.*, No. CV SAG-22-01648, 2023 WL 1472022, at *4 (D.

Md. Feb. 2, 2023), aff'd, No. 23-1198, 2023 WL 4105705 (4th Cir. June 21, 2023).

To state a disability discrimination claim under the WLAD, a plaintiff must show (1) he was perceived to have a disability; (2) he was able to perform the essential functions of the job; and (3) the perception of his disability was a substantial factor in the employer's decision to deny employment. *Taylor v. Burlington N. R.R. Holdings Inc.*, 801 F. App'x 477, 478 (9th Cir. 2020). "Although the WLAD offers protections at least as broad as those offered under the [Americans with Disabilities Act], Washington courts look to federal case law interpreting remedial statutes like the ADA and Title VII to guide interpretation of the WLAD." *Poe v. Waste Connections US, Inc.*, 371 F. Supp. 3d 901, 909 (W.D. Wash. 2019) (quoting *Taylor* v. *Burlington N. R.R. Holdings Inc.*, 904 F.3d 846, 848–49 (9th Cir. 2018)).

The Court concludes that no reasonable jury would find that a general policy requiring all employees be vaccinated singles out Strandquist for a "perceived disability." Since 2020, courts have addressed the issue of whether COVID-19 vaccination status is a "perceived disability" when the employer's vaccine policy applies to all workers and have concluded it is not. *See Kerkering v. Nike, Inc.*, No. 3:22-CV-01790-YY, 2023 WL 5018003, at *2 (D. Or. May 30, 2023) ("Courts have invariably rejected the theory that an individual's decision to forgo a vaccination constitutes a disability under the ADA."); *Gallo v. Washington Nationals Baseball Club, LLC*, No. 22-CV-01092 (APM), 2023 WL 2455678, at *4 (D.D.C. Mar. 10, 2023) ("Plaintiff thus has failed to state a 'regarded as' disabled claim because he has not alleged that Defendant perceived him to have a disability at the time of his termination. Every court that has considered this question has held the same."); *Johnson v. Mount Sinai Hosp. Grp., Inc.*, No. 22-CV-2936 (AMD) (JRC), 2023 WL 2163774, at *6 (E.D.N.Y. Feb. 22, 2023), aff'd, No. 23-466, 2024 WL 3289475 (2d Cir. July 3, 2024) ("Nor is the plaintiff's vaccination status a disability. The plaintiff cites no authority to support that position, nor is the Court aware of any.").

1    Strandquist does not respond to this argument in his opposition brief. *See* Dkt. 52 at 36–

2    38. He instead argues for the first time, that the ADA does not permit Defendants to inquire into

3    Strandquist's medical history without showing that the information is related to the job. *Id.* at 36.

4    The Court will not accept arguments that Strandquist has not timely raised in his pleadings, *see*

5    Sec. IV.B.1. Therefore, Defendants' motion for summary judgment on the "perceived disability"

6    claim under the WLAD is GRANTED.

7    6.    *Disparate Impact Claim under the WLAD*

8    Strandquist proceeds to argue that the vaccine mandate disparately impacted him because

9    it fell more harshly on those adhering to the Christian faith. Dkt. 20 ¶¶ 136–38; Dkt. 52 at 39. To

10   state a disparate impact claim under the WLAD, "the plaintiff must prove (1) there is a facially

11   neutral policy or practice and (2) the policy falls more harshly on a protected class." *State v. City*

12   *of Sunnyside*, 550 P.3d 31, 50 (Wash. 2024) (internal citation omitted).

13   Parties do not contest that the vaccine mandate is facially neutral. *See* Dkt. 20 ¶ 137; Dkt.

14   31 at 30. However, Defendants argue that Strandquist fails to show that the vaccine mandate had

15   a disproportionately adverse impact on a protected class. Dkt. 31 at 30. For example, Strandquist

16   does not allege that all Christians oppose vaccines or that non-vaccination is inherent in Christian

17   beliefs. *Id.* Strandquist responds that he established disparate impact through evidence showing

18   that Defendants denied religious accommodations at Eastern at a greater rate than they denied

19   medical accommodations. Dkt. 52 at 39; *see* Dkt. 51-2 at 7–12.

20   Strandquist's argument fails because this is not a relevant comparison for disparate

21   impact analysis. Strandquist wants to compare two protected classes—those who were eligible

22   for religious accommodations and those who were eligible for disability accommodations—to

23   argue that a higher rate of disability accommodations shows a disparate impact on religious

24   objectors. But this comparison is not meaningful because the legal requirements for

accommodating disabilities and religious beliefs under the WLAD are not identical. *See, e.g.*, RCW 49.60.040(7) (providing extensive definitions applicable only to disability accommodations).

Instead, the relevant comparison for a disparate impact claim is between those who objected to vaccination under the mandate based on secular *beliefs* as opposed to religious beliefs. Once that comparison is made, it is obvious that Strandquist's disparate impact claim fails. Those who objected to vaccination based on secular beliefs were not eligible for accommodation at all—they simply had to get vaccinated or lose their jobs. Religious objectors, on the other hand, were entitled to a process for seeking exemptions. The Proclamation fell *less* harshly on those who objected to vaccination for religious reasons, not more. The Court GRANTS Defendants' motion for summary judgment on Strandquist's claim of disparate impact under the WLAD.

### 7.    *Wage Theft*

Strandquist asserts a claim for wage theft under RCW 49.48. Dkt. 20 ¶¶ 108–113. Defendants argue that Strandquist is not alleging that he was not paid during his employment but is instead improperly claiming that he is entitled to his salary after separating from Eastern. Dkt. 31 at 31. Strandquist responds that his wage theft claim should survive summary judgment because he may be entitled to double damages under RCW 49.52. Dkt. 52 at 40.

The first paragraph of RCW 49.48.010 (2020) (amended 2022) provides, "[w]hen any employee shall cease to work for an employer, whether by discharge or by voluntary withdrawal, the wages due him or her on account of his or her employment shall be paid to him or her at the end of the established pay period." The second paragraph states: "It shall be unlawful for any employer to withhold or divert any portion of an employee's wages unless the deduction is" required by law, agreed to by employer and employee, or for medical services. *Id.*

Strandquist has not shown evidence from which a jury could find a violation of the statute. While lost wages may be an element of the damages for Strandquist's employment claims, he has not alleged that he has been unlawfully deprived of wages other than as damages resulting from other claims. To assert a plausible wage theft claim, Strandquist would need to assert a separate cause of action alleging, for example, that Defendants did not pay him for all hours worked before he was discharged or illegally deducted an amount from his paychecks.

The Court also rejects Strandquist's assertion of double damages for wage withholding, which he argues is supported by *Allstot v. Edwards*, 114 Wn. App. 625, 60 P.3d 601 (2002). *Allstot* involved a claim for unlawfully withheld wages by an employee who was reinstated after being fired for cause. *Id.* at 629. State civil service laws, not applicable here, required the employer to pay back wages following the reinstatement, but the employer delayed payment for years, and the court found the record to support a jury instruction on double damages. *Id.* at 633–35. Here, Strandquist does not identify any unlawfully withheld pay apart from the damages he claims as the result of his termination. *See Gunsul v. Boeing Co.*, No. C15-95RAJ, 2015 WL 11254742, at *3–4 (W.D. Wash. June 24, 2015) ("RCW Ch. 49.52 does not apply to wages withheld by an employer as a result of discrimination in violation of employment laws.") (quoting *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203–04 (9th Cir. 2002)). Defendants' motion for summary judgment on Strandquist's wage theft claim is GRANTED.

8.    *Arbitrary and Capricious Government Action*

Strandquist next argues that Defendants violated his right to be free from arbitrary and capricious government agency action under Washington law. Dkt. 20 ¶¶ 139–148. Strandquist alleges that Defendants "knew the vaccines did not stop COVID-19 transmission" and "improperly rejected all reasonable alternatives to vaccination." *Id.* ¶¶ 141, 142.

1        To establish this claim, Strandquist must show that Defendants' actions were "willful and

unreasoning and taken without regard to the attending facts or circumstances." *Hillis v. State,*

*Dep't of Ecology*, 131 Wn.2d 373, 383, 932 P.2d 139 (1997). "Where there is room for two

opinions, an action taken after due consideration is not arbitrary and capricious even though a

reviewing court may believe it to be erroneous." *Id.*; *see Pierce Cnty. Sheriff v. Civil Serv.*

*Comm'n of Pierce Cnty.*, 98 Wn.2d 690, 695, 658 P.2d 648 (1983) ("[O]ne who seeks to

demonstrate that action is arbitrary and capricious must carry a heavy burden.").

        Here, Strandquist has not presented evidence from which a factfinder could conclude that

Defendants' actions disregarded relevant facts or circumstances. While Strandquist claims that

Defendants ignored the CDC's statements that the vaccine does not stop COVID-19

transmission, he fails to mention that the same CDC presentation provided that the "greatest risk

of transmission [is] still among unvaccinated people," with detailed examples of how increasing

vaccination rates led to fewer cases and hospitalizations. Dkt. 43-15 at 6–7, 11. Defendants also

show that in July of 2021, a group of 60 medical professionals issued a memorandum calling for

a vaccine mandate for healthcare workers, which in part precipitated the Governor's

Proclamation. Dkt. 32-2 at 4. In response to the Proclamation, Defendants established an

accommodations process that allowed employees to seek a religious or medical exemption.

Dkt. 32-3 at 3. Defendants demonstrate that given concerns about the Delta variant, *see* Dkt. 45-

2, they concluded that Strandquist's in-person responsibilities required he be vaccinated or

reassigned to a remote position. *See* Dkt. 34 at 2–3.

        While Strandquist may disagree with Defendants' decisions, and might ultimately prove

that they violated Title VII or the WLAD, he does not point to any evidence from which a

reasonable factfinder could conclude that Defendants' accommodation process (or the

1    Proclamation itself) met the standard for arbitrary and capricious government conduct.

2    Accordingly, Defendants' motion for summary judgment on this claim is GRANTED.

3    **C.    Strandquist's Motion for Partial Summary Judgment**

4        *1.    Free Exercise and Equal Protection Claims*

5        Strandquist raised Free Exercise and Equal Protection claims for the first time in his

6    Motion for Partial Summary Judgment. Dkt. 38. Defendants oppose both claims, asserting that

7    Strandquist may not bring claims now that he did not plead in his complaint. Dkt. 44 at 1.

8    Strandquist argues his claims are not barred because Fed. R. Civ. P. 8(a)(2) requires only that he

9    provide "a short and plain statement of the claim showing that the pleader is entitled to relief,"

10   and he has adequately pled both claims. Dkt. 60 at 3.

11       The Court agrees that in determining whether a claim raised at summary judgment is

12   "new" (meaning not adequately pled), it looks to Rule 8's "liberal notice pleading" standard.

13   *Corona v. Time Warner Cable, Inc.*, No. CV 13-5521, 2014 WL 11456535, at *4 (C.D. Cal. Oct.

14   16, 2014) ("To rely on a theory at summary judgment, plaintiffs are 'required either (1) to plead

15   the additional [] theory in their complaints, or (2) to make known during discovery their intention

16   to pursue recovery on the [ ] theory omitted from their complaints.' . . . This concept underlies

17   the rationale for the Rule 8 pleading standard . . . ." (quoting *Coleman v. Quaker Oats Co.*, 232

18   F.3d 1271, 1294 (9th Cir. 2000)); *see Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-

19   69 (9th Cir. 2006) (evaluating whether the complaint provided the defendant with "fair notice,"

20   under Rule 8, of a legal theory set out in the response to a motion for summary judgment).

21       Rule 8 requires a complaint to contain "a short and plain statement of the claim showing

22   that the pleader is entitled to relief." Fed. R. Civ. P. 8(d)(1). "Each allegation must be simple,

23   concise, and direct." *Id*. The statement of the claim need only give the defendant "fair notice of

24   what the plaintiff's claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007). "Notice pleading requires the plaintiff to set forth in his complaint *claims for relief,* not causes of action, statutes or legal theories." *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008); *see also id.* ("A complaint need not identify the statutory or constitutional source of the claim raised."). Courts evaluate with "liberality" whether the complaint provides "sufficient notice." *Skaff v. Meridien N. Am. Beverly Hills, LLC,* 506 F.3d 832, 839 (9th Cir. 2007); Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

Relatedly, incorrect labeling of a claim or failure to specify its correct legal basis is not grounds for dismissal under Rule 8, and courts determine whether there is fair notice by looking to the substance of the claims. *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10–11 (2014) (overturning dismissal of plaintiffs' claim for their "failure to invoke" its statutory basis because the federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted"); *Sessions v. Chrysler Corp.*, 517 F.2d 759, 760–61 (9th Cir. 1975) (explaining that mislabeling a cause of action in the complaint "is irrelevant" so long as the plaintiff is "entitled to relief against [defendants] on any theory").

The above rules establish that "fair notice" does not require the complaint to identify with precision or correctly label the cause of action or legal theory relevant to a particular claim. Instead, the substance of the complaint must be sufficient to give the defendant some notice of the theory asserted. Nevertheless, the Court finds that Strandquist's amended complaint did not provide Defendants "fair notice" of his federal Free Exercise or Equal Protection claims.

To plead a Free Exercise claim, "a plaintiff must show that a government entity has burdened [his] sincere religious practice pursuant to a policy that is not neutral or generally applicable." *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1159 (9th Cir. 2022) (cleaned up). A law is not generally applicable if it "in a selective manner impose burdens only on conduct motivated

by religious belief." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 533 (1993). If the law is not neutral or generally applicable, "it is invalid unless it is justified by a compelling interest and is narrowly tailored to advance that interest." *Id.*

Strandquist's allegations do not suggest that Defendants' vaccine mandate was not neutral or generally applicable, given that all employees were subject to the same requirements. *See* Dkt. 20 ¶ 8–9. The only relevant fact that Strandquist alleges is that Defendants denied accommodations to employees seeking religious exemptions at a higher rate than employees with medical exemptions. *See id.* ¶ 56. But this alone does not sufficiently plead that the vaccine mandate itself was not neutral or generally applicable as he has not alleged facts that would show that "the law pursues the government's interest 'only against conduct motivated by religious belief' but fails to include in its prohibitions substantial, comparable secular conduct that would similarly threaten the government's interest." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1079 (9th Cir. 2015) (quoting *Lukumi*, 580 U.S. at 545). Accordingly, the Court finds that Strandquist did not adequately plead a Free Exercise claim.

To plead an Equal Protection claim, a plaintiff must show that a law treats people differently on the basis of a protected characteristic. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). "A statute is subject to the heightened scrutiny of equal protection analysis when it prohibits activities that are protected legally and involves a legally cognizable suspect class." *United States v. Pitts*, 908 F.2d 458, 459 (9th Cir. 1990) (citing *United States v. Holland*, 810 F.2d 1215, 1218–19 (D.C. Cir.))

Again, Strandquist did not adequately plead that the vaccine mandate treated individuals with religious beliefs differently from those with secular beliefs. Strandquist alleges that he sought an "interactive dialogue with the Department about his threatened termination," but "Defendants ignored the letter and never responded or engaged in an interactive dialogue" with

him. Dkt. 20 ¶ 16. While Strandquist alleges that Defendants knew they were treating religious objectors to the vaccine mandate differently than secular objectors, *see* Dkt. 20 ¶ 106, he does not offer any facts beyond conclusory statements about Defendants' conduct. As discussed previously, those employees who objected to vaccination based on secular beliefs were not entitled to be considered for exemptions at all, and employees with disabilities who were subject to a separate accommodation process with different legal requirements are not a "comparable secular group[]." *Bacon v. Woodward*, 104 F.4th 744, 751–52 (9th Cir. 2024) (quoting *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 694 (9th Cir. 2023)). Strandquist did not plead facts that would have put Defendants on notice about his Equal Protection claim, and he cannot bring that claim for the first time at summary judgment.

Finally, even if Strandquist had adequately pled these claims, they would be barred by the same sovereign and qualified immunity principles discussed earlier in this order. The federal constitutional claims against DSHS and Long in their official capacities would be barred by the Eleventh Amendment. *See* Sec. IV.B.1 The same claims against Long in her individual capacity would fail under the qualified immunity doctrine. *See* Sec. IV.B.2. Accordingly, Strandquist's motion for partial summary judgment is DENIED.

## V.    CONCLUSION

Therefore, it is hereby ORDERED that:

- Defendants' motion to strike the Declarations of O'Donnell and Zampich is GRANTED.

- Defendants' motion for summary judgment is GRANTED as to all of Strandquist's claims under the U.S. Constitution.

- Defendants' motion for summary judgment is GRANTED as to all of Strandquist's claims under the Washington Constitution.

- Defendants' motion for summary judgment is GRANTED as to Strandquist's Wage Theft and Arbitrary and Capricious Government Action claims under Washington law.

- Defendants' motion for summary judgment is GRANTED as to Strandquist's WLAD claims for "perceived disability" and "disparate impact."

- Defendants' motion for summary judgment is GRANTED as to Strandquist's failure-to-accommodate claims under Title VII against Long and DENIED against DSHS.

- Defendants' motion for summary judgment is DENIED as to Strandquist's failure-to-accommodate claims under the WLAD.

- Plaintiff's motion for summary judgment is DENIED.

Dated this 31st day of October, 2024.

Tiffany M. Cartwright
United States District Judge