UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RANDALL J STRANDQUIST,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>WASHINGTON STATE DEPARTMENT<br><br>OF SOCIAL AND HEALTH SERVICES;<br><br>WENDY LONG,<br><br>　　　　　Defendant. | Case No. 3:23-cv-05071-TMC<br><br>ORDER DENYING MOTION TO SHOW CAUSE FOR SANCTIONS |

## I.    INTRODUCTION

This case arises from the termination of Plaintiff Randall Strandquist's employment following his refusal to be vaccinated against COVID-19 in the fall of 2021. Strandquist contends that Defendants failed to reasonably accommodate his religion under the Washington Law Against Discrimination and Title VII of the Civil Rights Act. On February 14, 2025, following a five-day jury trial, the Court declared a mistrial due to a deadlocked jury. Before the Court is Strandquist's motion to show cause (Dkt. 212) why Defense counsel should not be sanctioned for statements made at closing argument that he asserts caused the mistrial. Defendants maintain that all the alleged misconduct raised in Plaintiff's motion was addressed at

trial, and they contend that no legal authority supports Plaintiff's argument that the hung jury can be attributed to counsel's statements. Because Plaintiff has not shown a legal or factual basis for sanctions in this context, the motion is DENIED.

## II.    BACKGROUND

The factual and procedural background of this case is recounted in several of the Court's prior orders. *See* Dkt. 86; Dkt. 92. The Court thus reviews only the facts and procedural history relevant to the present motion.

This case arises from Strandquist's termination of employment with Defendant Washington State Department of Social and Health Services ("DSHS") after he declined to be vaccinated against COVID-19. On February 10, 2025, the Court held a five-day jury trial to address two claims that had survived the summary judgment stage—one claim under Title VII of the Civil Rights Act, 42 U.S.C. 2000(e)-2(a)(1), and one claim under the Washington Law Against Discrimination, RCW 49.60.180. *See* Dkt. 175; Dkt. 165.

Leading up to and during trial, the Court reviewed the parties' proposed jury instructions and heard oral arguments on the disputed instructions. *See* Dkt. 179; Dkt. 151. Defendants proposed two additional instructions on reasonable accommodations and essential functions, which included: "Employers are not required to remove essential functions of an employee's jobs or to assign them to other employees as an accommodation. Thus, if you find that any requested accommodation by Plaintiff would have required the Defendants to remove any essential functions of his job, then the requested accommodation would not be reasonable or required to be provided to Plaintiff." Dkt. 151 at 39; Dkt. 160 at 21.

After the Court ruled that it would not give Defendants' proposed instructions, Defendants filed a motion for reconsideration on February 13, 2025. *See* Dkt. 182. In an oral ruling, the Court denied Defendants' motion for reconsideration. Dkt. 207 at 3. The Court noted

that "as a matter of statutory interpretation, [] the essential functions requirement is . . . a separate statutory requirement in the ADA that is not in Title VII." *Id.* at 3. But the Court explained, "I do think that an employer can certainly argue under the broader undue hardship test that reassigning essential functions would create an undue hardship based on the burden on other employees or the costs associated with that or whatever in the appropriate context of the case, so I don't think that's an impermissible argument, but I don't think it's a separate requirement as it is in the ADA." *Id.* at 4. The parties raised no further objections, and the Court read the final instructions to the jury. *Id.* at 139.

During closing arguments, Plaintiff's counsel objected to several statements made by Defense counsel. *See* Dkt. 207 at 198. First, Defense counsel argued: "DSHS was not required to eliminate the essential functions of plaintiff's job if it was going to be—if it was going to create an undue hardship." *Id.* at 188. Plaintiff's counsel preserved an objection for the record. *Id.* Second, Defense counsel argued: "The law says, if the employer has made a reasoned decision that an accommodation that's being requested is not reasonable, then it's a complete bar to [liability]." *Id.* at 190. Plaintiff's counsel objected that Defense counsel had misstated the undue hardship burden. *Id.* The Court allowed Defense counsel to proceed but reserved ruling. *Id.* at 190–91. Third, Defense counsel argued that Plaintiff could have found a higher-paying job after his employment was terminated, despite the Court granting Plaintiff's motion for judgment as a matter of law on Defendants' affirmative defense of failure to mitigate. *See id.* at 133, 198.

The Court sustained Plaintiff's objection, and at that point, excused the jury to hear further argument. *Id.* at 198. Defense counsel acknowledged her understanding that she was prohibited from arguing failure to mitigate. *See id.* at 199. Plaintiff's counsel then raised the following additional issues:

ORDER DENYING MOTION TO SHOW CAUSE FOR SANCTIONS - 3

> MR. McGLOTHIN: But, while the jury is out, three things concerned me very greatly during the closing, and I just want my objections noted. First, she said this is not a religious discrimination case. I can't let the jury think there's even an argument that this is not a religious discrimination case, because it is. Failure to accommodate is one way to prove disparate treatment. We went over that earlier. That was uncalled for. That's contrary to law, and I request a curative instruction. Same with essential functions.

*Id.* at 200. The Court denied Plaintiff's counsel's request for a curative instruction on essential functions and explained:

> THE COURT: All right. I'm not going to give a curative instruction on [essential functions], because I think it was fleeting. I think I correctly instructed the jury, and so I think, at this point, I'm not sure what the curative instruction would look like. . . . I think that—well, I don't think a curative instruction is necessary on that point.

*Id.* at 201. Plaintiff's counsel then argued:

> MR. McGLOTHIN: But the third thing, under *Groff*, you can't tell the jury that they have to just consider each accommodation and determine if it's reasonable or not, because *Groff* says just the opposite, and that's the United States Supreme Court precedent from 2023. It says you've got to do more than that. There's an affirmative duty on the employer's side to consider every available accommodation, and that's what you instructed them on.

*Id.* at 201–02. The Court agreed:

> THE COURT: I did note that, because I did think that the way it was represented in the argument was inconsistent with *Groff*, and so I am willing to essentially read that section of *Groff* to give a curative instruction on that point.

*Id.* at 202. After calling the jury back in, the Court gave the jury two curative instructions:

> THE COURT: All right. Everyone may sit down. I'm going to give you two brief instructions, and then counsel for the defendant will continue with her argument. First, I'm going to instruct you that the law recognizes that a failure to reasonably accommodate a religious belief is a form of discrimination.
>
> Second, I'm going to instruct you that the law recognizes that the duty to reasonably accommodate an employee's religious belief is not fulfilled by merely assessing the reasonableness of a particular possible accommodation or accommodations, but it requires the employer to—for undue hardship, the employer must show that it would have been undue hardship to do any of the possible accommodations and that they would have caused substantial costs to the conduct of the employer's business as defined in your instructions. All right. Go ahead.

ORDER DENYING MOTION TO SHOW CAUSE FOR SANCTIONS - 4

*Id.* at 204. Closing arguments concluded, and the jury was excused with instructions to return the next day to begin deliberations. *See* Dkt. 188.

On February 14, 2025, the jury began deliberating and sent four questions to the Court. *See* Dkt. 192 at 1 ("When we resumed from break in the afternoon, what was mentioned about the discrimination law?"); Dkt. 192-1 at 1 ("In reference to instruction No. 16 which states that 'A reasonable accommodation is the . . . that will reasonably preserve that employee's employment status such as compensation.' Is there any legal guidance that can be provided as to what constitutes preservation of compensation?"); Dkt. 192-2 at 1 ("What is the legal definition of 'reasonable'"); Dkt. 192-3 at 1 ("Can we have a legal dictionary").

Following each note, the Court convened with the parties to discuss how the Court would respond. *See* Dkt. 200 at 3–18. The Court provided a written response to each question. Dkt. 192 at 2; Dkt. 192-1 at 2; Dkt. 192-2 at 2; Dkt. 192-3 at 2. In response to the first note, the Court stated that it had provided two clarifying instructions following the afternoon break, and "the first instruction was that the law recognizes that the failure to reasonably accommodate religious belief is a form of discrimination." Dkt. 192 at 2. The Court then referred the jury to instructions 12–17 for the legal standard for failure to reasonably accommodate a religious belief. *Id.*

In response to the later notes, the Court directed the jury to review the law that was contained in the jury instructions. *See* Dkt. 192-1 at 2; Dkt. 192-2 at 2; Dkt. 192-3 at 2. The jury foreperson then sent a fifth note, stating that they could not get past Questions 1 and 2 of the verdict form. Dkt. 192-4. The note also revealed that the jury was deadlocked "at 5 no's and 3 yes's": and "cannot come to a unanimous verdict[.]" *Id.*

The Court informed the parties that it was concerned giving an *Allen* charge (in the form of Ninth Circuit pattern instruction 3.7) could be coercive under the circumstances. Dkt. 200 at 18–19. The jurors were called in and the Court asked the foreperson whether there was anything

ORDER DENYING MOTION TO SHOW CAUSE FOR SANCTIONS - 5

else the Court could do to assist the jury's deliberations, such as additional instructions or re-reading testimony. Dkt. 200 at 21. The foreperson responded that there may be testimony that would be helpful but could not specifically recall from their deliberations what that might be. *Id.* at 22. She added that the jury could "possibly" still reach a unanimous verdict. *Id.* at 21. The Court then asked the jurors to return to the jury room, confer among themselves, and discuss if there was specific testimony or additional instructions that would help them reach a verdict. *Id.* at 22.

The Court asked the parties whether they consented to giving the Ninth Circuit pattern instruction for a deadlocked jury. *Id.* at 23. Plaintiff's counsel argued that the Court should provide additional substantive instructions, but the Court denied the request. *See id.* at 25 ("I'm not going to speculate as to what is the issue that's causing them to reach an impasse and try to come up with additional instructions based on guesswork, essentially."). The Court stated that it would first hear whether the foreperson identified specific information that would be helpful and then potentially give the pattern deadlock jury instruction. *Id.*

When the jurors returned, the foreperson told the Court that they would not be able to reach a unanimous decision because they had different viewpoints on what constituted "reasonable" in Instruction 16. *See id.* at 25–26 ("[F]or Instruction 16, is the word 'reasonable' a subjective term? If so, I don't think we'll be able to come to a unanimous decision, because we have different viewpoints on that specific instruction."). The Court then polled each juror asking whether "there is a reasonably probability that, through further deliberations, you could reach a verdict." *Id.* at 26. Each juror responded, "No." *Id.* at 26–27. The jury was again excused, and the Court asked the parties whether they consented to declaring a mistrial. *Id.* at 28. Both parties consented and the Court declared a mistrial. *Id.* at 28–29. The jurors were discharged, and the

Court granted leave to counsel to speak with jurors who were willing to share their experiences and thoughts about the case. *Id.* at 29–30.

A retrial is scheduled to begin on September 3, 2025. Dkt. 201. On April 18, 2025, Plaintiff filed a motion to show cause why sanctions should not be imposed against Defense counsel for causing the mistrial. Dkt. 212. Defendants responded, Dkt. 217, and Plaintiff replied, Dkt. 221. The motion is briefed and ripe for the Court's consideration.

### III.     LEGAL STANDARD

"Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021) (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017)). "That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* (citation modified). "When acting under its inherent authority to impose a sanction, as opposed to applying a rule or statute, a district court must find either: (1) a willful violation of a court order; or (2) bad faith." *Id.* at 1090 (citation omitted).

"A determination that a party was willfully disobedient is different from a finding that a party acted in bad faith. Either supports the imposition of sanctions." *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012). A "willful" violation of a court order "does not require proof of mental intent such as bad faith or an improper motive, but rather, it is enough that a party acted deliberately." *Id*. Bad faith, in contrast, "including conduct done vexatiously, wantonly, or for oppressive reasons, requires proof of bad intent or improper purpose." *Am. Unites for Kids*, 985 F.3d at 1090. Courts must make an "explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.'" *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (citing *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767 (1980)); *see*

*Hernandez v. City of Vancouver*, 657 F. App'x 685, 687 (9th Cir. 2016) (same). "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Primus Auto. Fin. Servs., Inc.*, 115 F.3d at 649 (citation omitted). "Because the district court's inherent powers are so potent," the "bad faith requirement sets a high threshold[.]" *Id.* at 649, 650.

### IV.    DISCUSSION

**A.    Plaintiff fails to show that the mistrial was caused by Defense counsel's closing statements.**

*1.    No evidence shows that a pause in Defense counsel's argument was intended to mislead the jury.*

Plaintiff cites *Lasar v. Ford Motor Company* in support of his argument that Defendants' statements during closing "unquestionably confused" the jury and resulted in the mistrial. 399 F.3d 1101, 1104 (9th Cir. 2005); Dkt. 212 at 9–10.

In *Lasar,* the plaintiff brought a products liability suit against Ford after the plaintiff was involved in a rollover accident. 399 F.3d at 1104. The district court had issued two pretrial orders that prohibited Ford from introducing evidence that the plaintiff had consumed alcohol before the accident and had not been wearing his seatbelt when the accident occurred. *Id.* During opening statements, however, Ford's counsel told the jury that the plaintiff's accident occurred after he "met up with some of his friends and spent the day playing pool, visiting some local establishments" and then "made the decision to drive himself home." *Id.* at 1114.

The plaintiff moved for a mistrial based on these statements. *Id.* at 1106. The district court granted the mistrial, concluding that both the statements made by Ford's counsel and "the tone and inflection" of his voice impermissibly referenced the plaintiff's use of alcohol. *Id.* at 1114–15. As a result, the court imposed monetary sanctions against Ford, which "were designed to compensate Lasar for unnecessary costs and attorney's fees and to reimburse the district court

for the jury costs incurred as a result of the mistrial." *Id.* at 1111. On appeal, the Ninth Circuit agreed, finding that "[e]ven the record . . . suggests a calculated attempt to introduce evidence that Lasar was drinking before the accident." *Id.* at 1115. Since the Ninth Circuit could not say "that the district judge clearly erred in finding that Sutter's words conveyed the unambiguous message that Lasar had been drinking at a bar (or bars) and then made the dangerous and unlawful decision to drive himself home while intoxicated," it held that the district court did not abuse its discretion when it determined that Ford's counsel violated the order in limine. *Id.*

Plaintiff analogizes the conduct by Ford's counsel in *Lasar* with statements made by Defense counsel to support his conclusion that the "purposeful actions of the defendant's counsel in both cases resulted in a mistrial." Dkt. 212 at 10. For example, Plaintiff argues that Defense counsel's pause while discussing essential functions and undue hardship was intended to mislead the jury in the same way Ford's counsel used his tone to reference the plaintiff's prior alcohol consumption. *Id.* Specifically, Defense counsel stated that "DSHS was not required to eliminate the essential functions of plaintiff's job if it was going to be—if it was going to create an undue hardship." Dkt. 207 at 188. Based on this pause, Plaintiff contends "Defense counsel tried to skirt the Court's prior rulings by making an excluded statement of law and then pausing before adding a limited phrase in a minimizing manner." Dkt. 212 at 10.

Defendants respond that "the Court specifically permitted Defendants to argue that removing the essential functions of Plaintiff's job could have been an undue hardship," and "the Court declined to issue a curative instruction regarding 'essential functions,' finding that none was necessary because the comment was 'fleeting,' to which Plaintiff did not object." Dkt. 217 at 5. Defendants also contend that "the very brief and unintentional pause" cannot reasonably be the cause of the mistrial because the jury was deadlocked on whether Defendants' offer to reassign Plaintiff to a lower-paying position was a reasonable accommodation. *See id.*

ORDER DENYING MOTION TO SHOW CAUSE FOR SANCTIONS - 9

Defendants further argue that *Lasar* is inapplicable because the facts presented here are distinguishable from the facts underlying *Lasar*. *Id.* at 6. First, they assert that the court in *Lasar* granted a mistrial "because of the statements made in violation of the court order and specifically advised the plaintiff that it would award him costs." *Id.* (citing *Lasar*, 399 F.3d at 1106) (emphasis omitted). Here, the Court declared a mistrial, with the parties' consent, because of a deadlocked jury. *Id.* at 7; *see* Dkt. 200 at 28. Second, in *Lasar*, the court found that counsel made the statement in bad faith because it was "made in direct and deliberate violation of a specific order of the court." Dkt. 217 at 7. But, Defendants argue, the Court here did not make a finding that Defense counsel's statement on essential functions violated a court order. *Id.*

The Court agrees with Defendants that *Lasar* is inapposite here, and that there is no evidence in the record to show that Defense counsel's pause mid-statement was intended to mislead the jury. And even in *Lasar*, the Ninth Circuit affirmed the district court's finding because the *record*, not the attorney's tone alone, suggested a "calculated attempt" to introduce prohibited evidence. 399 F.3d at 1115. But here, the Court allowed Defense counsel to argue that "under the broader undue hardship test . . . reassigning essential functions would create an undue hardship based on the burden on other employees or the costs associated with that[.]" Dkt. 207 at 4. Defense counsel's statement was within the scope of the Court's prior order, and at the time, the Court ruled that a curative instruction was unnecessary because the statement was fleeting and the Court had correctly instructed the jury on the law. *See* Dkt. 207 at 201. The Court thus DENIES the motion on this basis.

> **2.** The record does not show that Defense counsel's statements in closing caused the jury deadlock.

Plaintiff next argues that the jury was confused about the "preservation of employment status and what constitutes reasonableness," and this "confusion stemmed from Defendants'

ORDER DENYING MOTION TO SHOW CAUSE FOR SANCTIONS - 10

counsel's statements in closing which were contrary to the law and the prior direction of this Court." Dkt. 212 at 10. Plaintiff first points to Defense counsel's statement: "The law says, if the employer has made a reasoned decision that an accommodation that's being requested is not reasonable, then it's a complete bar to [the employer's] [liability]." *Id.* at 10–11; *see* Dkt. 207 at 190. Plaintiff argues that Defense counsel misstated the legal standard under *Groff v. DeJoy*, which provides that "Title VII requires that an employer reasonably accommodate an employee's practice of religion, not merely that it assess the reasonableness of a particular possible accommodation or accommodations." 600 U.S. 447, 473 (2023); Dkt. 212 at 11–12.

Plaintiff also contends that Defense counsel was "wrong to instruct the jury that if an accommodation eliminated the need for Dr. Strandquist to get vaccinated, such as by finding him the highest paying other job position that did not require vaccination, then that would have been *ipso facto* a reasonable accommodation." Dkt. 212 at 13 (emphasis in original). Plaintiff argues that a demotion does not preserve employment status and the "jury showed their resulting confusion by asking the Court for guidance on precisely that question." *Id.*

Finally, Plaintiff's counsel asserts that during their post-trial conversations with jurors—which the Court allowed for the purpose of helping counsel prepare to retry the case—some jurors disclosed to Plaintiff and Defense counsel that they had agreed that Plaintiff had a sincerely held religious belief which conflicted with receiving the COVID-19 vaccine. *Id.* at 9. But the jurors were deadlocked only on whether the offer of a lower-paying job transfer was a reasonable accommodation, and two jurors stated that they believed that DSHS was not allowed to eliminate job assignments from the employee's position description. *Id.* Plaintiff contends that this evidence establishes that Defense counsel's closing statements sufficiently confused the jury on the law, which caused the mistrial. *Id.* at 9–14.

ORDER DENYING MOTION TO SHOW CAUSE FOR SANCTIONS - 11

Defendants argue in response that the Court provided curative instructions regarding discrimination and the portion of *Groff* addressing the employer's duty to reasonably accommodate an employee's religious belief. Dkt. 217 at 3 (citing Dkt. 207 at 204). Defendants also contend that Plaintiff mischaracterizes Defense counsel's statement on reassignment. *Id.* at 8. Defendants assert that they did not say that reassignment was "*ispo facto* a reasonable accommodation," but rather Defense counsel stated, "if an accommodation eliminates the conflict, and here, that means not requiring Dr. Strandquist to get the vaccination, that can qualify, potentially, as a reasonable accommodation." *Id.* (emphasis removed); *see* Dkt. 207 at 195. They argue that the jury was then free to determine based on the Court's instruction whether the reassignment reasonably preserved Plaintiff's compensation. Dkt. 217 at 8.

Defendants also cite to *Miller v. City of Los Angeles*, where the Ninth Circuit considered whether the district court properly imposed sanctions on defense counsel based on statements made during closing argument. 661 F.3d 1024, 1026 (9th Cir. 2011); Dkt. 217 at 10–11. In *Miller*, the district court had prohibited defense counsel from arguing at trial that the decedent possessed a weapon when he was shot by one of the defendants. 661 F.3d at 1026. During closing, defense counsel described the moments leading up to the shooting and stated that the decedent had just shot another individual before being confronted by the defendant. *Id.* at 1027–28. The plaintiffs' counsel objected to defense counsel's final statement as violating the court's prior order, and the district court instructed the jury to ignore the statement. *Id.* at 1028. The jury was unable to reach a verdict, and the court declared a mistrial. *Id.* at 1026. At the retrial, the jury returned a verdict in favor of the defendants, and plaintiffs moved for sanctions against defense counsel. *Id.* Following the sanctions hearing, the district court imposed a fee of $63,678.50—the amount of money the plaintiffs had incurred for attorney's fees in the first trial. *Id.* at 1029.

On appeal, the Ninth Circuit reversed the district court's imposition of sanctions, concluding that the sanctions were not warranted because the district court did not link the defense counsel's statement to the harm the plaintiffs suffered. *Id.* In other words, because the "district court made no finding of causation, and without finding that [the defense counsel's] eight words caused the first jury to hang, the district court had no authority to order defendants to compensate plaintiffs for the attorneys' fees and costs they spent on the first trial." *Id.* at 1029.

Here, Defendants maintain that Plaintiff's motion "relies almost entirely on Ms. Alvarado's declaration purporting to summarize post-trial conversations that the jury voluntarily provided to counsel." Dkt. 217 at 11. Though Plaintiff asserts that the foreperson is willing to attest, Dkt. 213 ¶ 7, Defendants argue that Plaintiff has not provided a declaration from the foreperson or any other juror that would constitute admissible evidence, Dkt. 217 at 11. They further contend that "as in *Miller*, Plaintiff has not and cannot offer any admissible evidence that the disputed statements made by Defense Counsel 'caused' the jury to hang." *Id.*

The Court begins by noting that it provided two curative instructions on what constitutes "discrimination" and on Defendants' burden under *Groff* to show undue hardship. *See* Dkt. 207 at 204. Plaintiff has not provided evidence to show that the jury did not follow the Court's instructions. *See generally* Dkt. 212; *Miller*, 661 F.3d at 1030 (Courts "have a strong presumption that jurors follow instructions."). Next, the Court agrees with Defendants that Defense counsel did not say that reassignment itself constituted a reasonable accommodation. *See* Dkt. 207 at 195. Rather, Defense counsel stated that an accommodation that eliminates the conflict could potentially qualify as a reasonable accommodation, which was within the scope of the Court's prior orders and instructions on the law. *See id.*; *see also* Dkt. 186 at 18 ("A reasonable accommodation is one that eliminates the employee's religious conflict in a way that

will reasonably preserve that employee's employment status such as compensation, terms, conditions, or privileges of employment.").

Finally, the record does not show that the jurors deadlocked due to Defense counsel's statements. Plaintiff asserts that "any confirmation . . . needed as to the likely connection between Defendants' misstatements of law to the jury, and the jury's confusion . . . is provided by the jurors' own description of what went wrong." Dkt. 221 at 6. Plaintiff, in his reply, then attached an email from the foreperson who confirmed the following: (1) the jury was deadlocked on whether the reassignment offer was a reasonable accommodation and (2) additional instructions provided by Plaintiff's counsel could have helped them reach a unanimous decision. Dkt. 222-1 at 2–3.

First, the Court will not consider the email exhibit that was presented for the first time in reply and does not have an accompanying sworn declaration by the foreperson. *See United States v. Patterson*, 230 F.3d 1168, 1172 n.3 (9th Cir. 2000) (new arguments and evidence presented for the first time in a reply are waived); *Sagdai v. Travelers Home & Marine Ins. Co.*, 639 F. Supp. 3d 1091, 1101 (W.D. Wash. 2022) ("Without accompanying admissible declarations, the documents attached to them are not properly authenticated.").

But even if the Court did consider the inadmissible email, it is not enough for the Court to conclude that Defendants' closing statements caused the mistrial. The foreperson stated only that additional instructions provided by Plaintiff's counsel on reasonable accommodations "would have been very helpful for helping us come to a unanimous decision," and "if the defendant would not have mentioned that they were not required to alter the job functions, that *could have possibl[y] helped* us make a unanimous decision." Dkt. 222-1 at 2 (emphasis added). The foreperson's statements speculate about the possibility that different instructions or arguments could have assisted in their deliberations. *See id.* They do not, however, draw a causal link

ORDER DENYING MOTION TO SHOW CAUSE FOR SANCTIONS - 14

between Defendants' closing statements and the juror's failure to reach a verdict. *See Miller*, 661 F.3d at 1030 ("If any of the jurors had said anything suggesting that [the defense counsel's] single sentence caused the jury to hang, the [plaintiffs] would no doubt have proffered a declaration to that effect."). Without a finding of causation, the Court lacks authority to sanction Defense counsel. *See id.* at 1029 ("[W]thout a finding that [the defense counsel's] eight words caused the first jury to hang, the district court had no authority to order defendants to compensate plaintiffs for the attorneys' fees and costs they spent on the first trial.").

Nor does the email show that Defense counsel acted in bad faith. *See Fink v. Gomez*, 239 F.3d 989, 993 ("[B]ad faith is required for inherent power sanctions. . . . [S]anctions are permissible when an attorney has acted recklessly if there is something more—such as an improper purpose."). There is no indication from the evidence presented, including the foreperson's email, that Defense counsel intended to mislead the jury. Absent a finding of bad faith, the Court cannot impose sanctions on Defense counsel. *See Evon*, 688 F.3d at 1035 ("[S]anctions are available if the court specifically finds bad faith or conduct tantamount to bad faith.") (citation modified). Since the record does not warrant sanctions based on Defense counsel's closing argument, the Court DENIES Plaintiff's motion.

V. **CONCLUSION**

For these reasons, Plaintiff's motion for sanctions (Dkt. 212) is DENIED.

Dated this 17th day of June, 2025.

Tiffany M. Cartwright
United States District Judge