1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RANDALL J STRANDQUIST,

　　　　　　　　Plaintiff,

　　　v.

WASHINGTON STATE DEPARTMENT

OF SOCIAL AND HEALTH SERVICES,

　　　　　　　　Defendant.

Case No. 3:23-cv-05071-TMC

ORDER ON SUPPLEMENTAL MOTIONS
IN LIMINE

　　　Before the Court are Plaintiff Randall J. Strandquist's and Defendant Washington State

Department of Social and Health Services' ("DSHS") motions in limine (Dkt. 226, 229). The

Court has considered the parties' briefs and oral arguments. The motion is ripe for the Court's

consideration.

## I.　　BACKGROUND

　　　This case arises from Strandquist's termination of employment with DSHS after he

declined to be vaccinated against COVID-19. On February 10, 2025, the Court held a five-day

jury trial to address two claims that had survived the summary judgment stage—one claim under

Title VII of the Civil Rights Act, 42 U.S.C. 2000(e)-2(a)(1), and one claim under the Washington

Law Against Discrimination, RCW 49.60.180. *See* Dkt. 175; Dkt. 165. At the conclusion of the fifth day of trial, the Court declared a mistrial due to a deadlocked jury. Dkt. 191.

A retrial is scheduled to begin on September 3, 2025. Dkt. 201. Both parties filed their supplemental motions in limine on July 28, 2025. Dkt. 226, 229. Both parties responded to the other's motions. Dkt. 245, 247. The Court addresses each motion in turn.

## II.    LEGAL STANDARD

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013).

"To exclude evidence on a motion in limine the evidence must be inadmissible on all potential grounds." *Goodman v. Las Vegas Metro. Police Dep't,* 963 F. Supp. 2d 1036, 1047 (D. Nev. 2013) (internal quotations omitted). "[I]f not, the evidentiary ruling is better deferred until trial, to allow for questions of foundation, relevancy, and prejudice to be resolved with the appropriate context." *Romero v. Washington*, No. 2:20-cv-01027-TL, 2023 WL 6458871, at *1 (W.D. Wash. Oct. 4, 2023).

In ruling on motions in limine, courts do not "resolve factual disputes or weigh evidence." *United States v. Meech*, 487 F. Supp. 3d 946, 952 (D. Mont. 2020). The inquiry is discretionary. *See United States v. Layton*, 767 F.2d 549, 554 (9th Cir. 1985).

## III.    DISCUSSION

### A.    Strandquist's Motions in Limine

> ***1.***    *Motions in Limine 1 and 2: Preclude DSHS from challenging that Strandquist had a sincerely held religious belief or that the belief conflicted with his ability to comply with the vaccine requirement.*

Strandquist seeks to exclude arguments challenging whether he had a sincerely held religious belief that prevented him from being vaccinated. Dkt. 229 at 3–7. Strandquist argues that DSHS "judicially admitted Dr. Strandquist sincerely held a religious belief . . . which

conflicted with his ability to comply with the Vaccine Requirement" and alternatively, "issue preclusion precludes Defendant[] from challenging Dr. Strandquist's sincerity . . . because [it] took final agency action when granting his application for a religious exemption[.]" *Id.* at 3, 4.

DSHS has agreed it will not challenge Strandquist's prima facie case. *See* Dkt. 245 at 1. The motions are thus DENIED as moot.

> **2.** *Motion in Limine 3: Preclude DSHS from challenging that Strandquist notified DSHS about his sincerely held religious belief and how it conflicted with his ability to comply with the vaccine requirement.*

Strandquist moves to exclude arguments challenging whether he notified DSHS about his sincerely held religious belief and how it conflicted with his ability to receive the COVID-19 vaccine. Dkt. 229 at 7–8. Strandquist argues that during the first trial, he moved for judgment as a matter of law that "he had established he notified Defendants about his religion and the conflict it created with his ability to comply with the Vaccine Requirement[.]" *Id.* at 8. Since the Court granted his motion, Strandquist contends that DSHS is precluded from raising this issue at the retrial. *Id.*

Again, DSHS has agreed it will not challenge Strandquist's prima facie case. *See* Dkt. 245 at 1. Accordingly, the motion is DENIED as moot.

> **3.** *Motion in Limine 4: Preclude DSHS from challenging that Strandquist was threatened with or subjected to an adverse employment action.*

Strandquist seeks to exclude arguments challenging whether he was threatened with or subjected to an adverse employment action. Dkt. 229 at 8–9. Since the Court granted his motion for judgment as a matter of law "that Defendant[] had threatened him with or subjected him to an adverse employment action . . . when [it] discharged him from his continued public employment for failing to comply with the Vaccine Requirement," Strandquist argues that DSHS is precluded from raising this issue. *Id.* at 8.

Given that DSHS has agreed it will not challenge Strandquist's prima facie case, *see* Dkt. 245 at 1, the motion is DENIED as moot.

**4.** *Motion in Limine 5: Preclude DSHS from arguing that Strandquist was offered a reasonable accommodation.*

Strandquist moves to exclude any argument that the offer of reassignment to a Management Analyst 5 position was a reasonable accommodation. Dkt. 229 at 9–11. Strandquist argues that a reasonable accommodation "must preserve an employee's employment status (compensation, terms, conditions, or privileges of employment)." *Id.* at 11. But because the reassignment "would have paid [Strandquist] approximately $50,000 less per year and that would have detrimentally affected the defined benefits he would receive," DSHS should not be permitted to argue it was a reasonable accommodation. *Id.*

This motion is a partial summary judgment motion disguised as a motion in limine. This Court strictly enforces the dispositive motion deadline and will not entertain untimely dispositive motions at the motion in limine stage. As the Court discussed with counsel at the pretrial conference, any party may raise a timely Rule 50 motion if they believe the evidence at trial entitles them to judgment as a matter of law on a claim or part of a claim. This motion is DENIED.

**5.** *Motion in Limine 6: Preclude DSHS from arguing that accommodating Strandquist in his current position or maintaining his employment status would constitute an undue burden.*

Strandquist asks the Court to exclude any argument that accommodating him in his current position would have resulted in an undue burden on DSHS. Dkt. 229 at 12–15. This motion is again another partial summary judgment motion and is not proper use of motions in limine. This motion is DENIED.

6.    *Motion in Limine 7: Preclude DHS from arguing that Strandquist breached his duty to use ordinary care to mitigate his backpay damages because he had the ability to become re-employed earlier.*

Strandquist seeks to exclude any argument that he failed to mitigate damages because he did not seek reemployment earlier or did not seek a higher-paying position even after obtaining reemployment. Dkt. 229 at 15. Strandquist argues that at the first trial, DSHS did not put forth any evidence to prove by a preponderance of evidence that (1) there were openings in comparable positions available for Strandquist after he was terminated, (2) Strandquist did not use reasonable care and diligence in seeking those openings, and (3) the amount of damages would have been reduced had Strandquist used reasonable care and diligence in seeking those openings. *Id.* Since the Court granted Strandquist's Rule 50 motion on failure to mitigate, *see* Dkt. 230-2 at 6, Strandquist maintains that DSHS should not be allowed to argue failure to mitigate at the retrial, Dkt. 229 at 15.

DSHS argues that Strandquist "is simply incorrect that the law of the case doctrine precludes Plaintiff from retrying the failure to mitigate defense" because "the Court has not been divested of jurisdiction over this matter, and the law of the case doctrine does not preclude the Court from reconsidering its decision not to give the Jury Instruction on the Failure to Mitigate Defense to the jury after the close of the retrial." Dkt. 245 at 9 (citing *Taylor v. Kahne Corp.*, No. C05-0243L, 2006 WL 1587442, at *1 (W.D. Wash. June 5, 2006)). DSHS further argues that even if the law of the case doctrine did apply, the Ninth Circuit has created exceptions where the court has discretion not to follow a prior decision if the "second trial presents 'substantially different' evidence." *Id.* at 10 (quoting *Evanger v. Georgia-Pac. Gypsum, LLC.*, No. 3:17-CV-05521-BJR, 2021 WL 2255515, at *1 (W.D. Wash. May 12, 2021), *aff'd sub nom. Offutt v. Georgia-Pac. Gypsum LLC*, No. 21-35624, 2022 WL 1955740 (9th Cir. June 6, 2022)).

Defendants are correct that this Court is not necessarily bound by the law-of-the-case doctrine because "a district court may reconsider its prior rulings so long as it retains jurisdiction over the case." *United States v. Smith*, 389 F.3d 944, 948 (9th Cir. 2004). But Defendants are not asking the Court to reconsider its Rule 50(a) ruling from the first trial. Instead, Defendants are asking for a second chance to try and prove an affirmative defense that they lost as a matter of law at the first trial, despite having "been fully heard on an issue during a jury trial" and the court finding "that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). This is more analogous to a request to re-try an issue that was decided in a partial verdict by the jury. *See, e.g.*, *Chavez v. San Francisco B.A.R.T. Dist.*, No. C22-06119 WHA, 2024 WL 4369660 (N.D. Cal. Oct. 1, 2024) (declining to retry plaintiff's prima facie case after partial jury verdict in religious accommodation trial).

Defendants had a full and fair opportunity to litigate their failure-to-mitigate defense at the first trial. That effort failed. There is no requirement or good reason that they be allowed a second bite at the apple, when the evidence on the failure-to-mitigate defense is not intertwined with the issues that must be retried. *See id.* at *2. The purpose of this retrial is to decide the issues that could not be decided at the first trial. The failure-to-mitigate defense was dismissed as a matter of law and will not be retried. *See also, e.g.*, *Hawkins v. SimplexGrinnel, L.P.*, No. 12cv1406-MMA (BGS), 2017 WL 6344798, at *3 (S.D. Cal. Dec. 12, 2017) (declining to allow plaintiff to present on retrial punitive damages claim it had lost on Rule 50 at first trial).

Accordingly, the motion is GRANTED. Defendants may not present evidence or argument that Plaintiff failed to mitigate his damages.

7.      *Motion in Limine 8: Preclude DSHS from testifying or presenting evidence to argue that it may have been subjected to criminal or civil liability for violating the vaccine requirement had it accommodated Strandquist's religious belief by allowing him to remain employed.*

Strandquist moves to exclude any argument that DSHS would have been subject to civil or criminal liability had it allowed Strandquist to remain employed in his position. Dkt. 229 at 16–17. Strandquist argues that "potential liability for State law violations, in the abstract, do not give rise to that [undue hardship] presumption in the public employment area[.]" Dkt. 229 at 16 (citing *Bolden-Hardge v. Off. of California State Controller*, 63 F.4th 1215, 1225 (9th Cir. 2023)).

DSHS asserts that it is not arguing that accommodating Strandquist would have required it to violate the Proclamation or that it would have been subject to any civil or criminal liability if it had allowed Strandquist to continue working in his position unvaccinated. Dkt. 245 at 12. Rather, DSHS states that it is "simply arguing that they were required to follow the Proclamation and that following the Proclamation was what they were doing when they made the accommodation decision." *Id.* DSHS also contends that *Bolden-Hardge* is inapposite because in that case, the defendants were responsible for creating and enforcing the law at issue, whereas here, DSHS did not create the Proclamation. *Id.* Accordingly, DSHS maintains that it should be permitted to make the same argument at the retrial that it was required to follow the Proclamation. *Id.* at 13.

These arguments are better evaluated in the context of testimony as it is actually presented at trial. The witnesses for DSHS may certainly testify about the Proclamation and their understanding of its requirements. The Court will consider objections on an individual basis to questions that call for speculation or opinion testimony that accommodating Plaintiff would have violated the Proclamation. The motion is thus DENIED without prejudice.

**8.** *Motion in Limine 9: Preclude DSHS from testifying or presenting evidence to argue that it terminated Strandquist's employment for any reason other than noncompliance with the vaccine requirement.*

In its response, DSHS explains that it agreed not to oppose this motion. Dkt. 245 at 2. Specifically, DSHS advised Strandquist that it would not include testimony on Strandquist's performance that was unrelated to the vaccine mandate, such as suggest Strandquist was a poor performer or could have been terminated for performance reasons other than his refusal to be vaccinated. Accordingly, this motion is DENIED as moot.

**9.** *Motion in Limine 10: Preclude DSHS from testifying or presenting evidence about Strandquist's employment history other than work-related compensation and benefits, including disciplinary action and performance reviews.*

For the same reasons provided for the prior motion in limine, this motion is DENIED as moot.

**10.** *Motion in Limine 11: Preclude DSHS from testifying or presenting evidence about lay opinion on vaccine efficacy.*

Strandquist seeks to exclude any testimony or evidence about vaccine efficacy. Dkt. 229 at 17. Strandquist argues that allowing this evidence would only result in lay witnesses reciting what they are told or read, which would "deprive Plaintiff of the right to cross examine the true source of information for their opinions." *Id.* at 18.

DSHS argues that the motion should be denied as "vague and improper." Dkt. 245 at 13. Specifically, DSHS asserts that Strandquist "does not identify with sufficient particularity any proposed testimony they are seeking to exclude" and "effectively seeks to prevent Defendant from presenting evidence crucial to their defense regarding the information available to Defendant at the time regarding the vaccine's efficacy and risk of transmission." *Id.* DSHS also argues that Strandquist does not cite any authority in support of "his novel proposition" and numerous courts have taken judicial notice of such evidence in similar vaccine mandate cases.

*Id.* at 14 (citing *Brock v. City of Bellingham*, Case No. 2:24-cv-850-BJR, 2025 WL 254725, at *1–3, 10, n.2 (W.D. Wash. Jan. 21, 2025)).

The Court agrees this motion is too broad for a pretrial ruling. The motion is thus DENIED.

    **11.**    *Motion in Limine 12: Exclude testimony on or introduction of the Proclamation, OFM Guidance, and other hearsay statements.*

Strandquist seeks to exclude OFM guidelines that contain "out of court statements about vaccine efficacy, endorsements by health organizations [about] vaccine requirement as opposed to frequent testing . . . and that the primary series of a COVID vaccine was the best tool to stem COVID's spread." Dkt. 229 at 18.

DSHS argues, "to the extent the motion seeks to preclude unidentified documents or unidentified statements within documents, it is too vague and premature for Defendant to respond[.]" Dkt. 245 at 15. DSHS next argues that the Proclamation and OFC Guidance are "public and self-authenticating records." *Id.* at 16 (citing Fed. R. Evid. 803(8) and 902(5)). Furthermore, DSHS asserts that they may be offered under the state of mind and present sense impression exceptions. *Id.* (citing Fed. R. Evid. 803(1) and 803(3)). Finally, DSHS argues that Strandquist has offered a version of the OFM Guidance as an exhibit, and it is "unclear how or why Plaintiff intends to use this document if he contends that it should be precluded as hearsay." *Id.* at 15.

To the extent that the motion seeks to exclude unidentified statements, this is not a proper use of motions in limine. The Proclamation and OFM Guidance qualify as self-authenticating public records and may be admitted for non-hearsay purposes. *See* Fed. R. Evid. 803(8), 902(5). The Court will rule on hearsay objections to specific testimony or exhibits as they arise at trial. This motion is DENIED.

12.    *Motion in Limine 13: Preclude DSHS from shifting liability to the Office of Financial Management.*

Strandquist moves to exclude any argument that OFM is a legally distinct agency from DSHS for liability purposes or that OFM's issuance of a vaccine mandate guidance shields DSHS from liability. Dkt. 229 at 19. DSHS argues that the motion is not a proper subject for a motion in limine as it seeks a legal ruling on the relationship between different state entities. Dkt. 245 at 17. The Court agrees that this motion is not proper use of motions in limine. The motion is thus DENIED. The Court will consider objections to related questions or exhibits as they arise at trial.

**B.    DSHS's Motions in Limine**

1.    *Motion in Limine 1: Exclude Strandquist's proposed Exhibit 17 and opinions or calculations drawn from the exhibit.*

DSHS seeks to exclude Strandquist's proposed Exhibit 17, *see* Dkt. 227-1, and any opinions or calculations drawn from it. Dkt. 226 at 2–7. DSHS points out that the date on the document is January 12, 2022, though Strandquist has named the exhibit "January 12, 2021, Washington State COVID-19 Vaccine Mandate Data." *Id.* at 2. Specifically, DSHS argues that Dr. Harvey Risch's trial testimony was based on data that was not available until three to four months after Strandquist was separated, which he used to "testif[y] at length about vaccine rates, headcount, and breakthrough infection rates[.]" *Id.* at 3. Since January 2022 data would  not reflect breakthrough infection rates in September or October 2021, DSHS asserts that any opinions using this data is "wholly unreliable." *Id.* (citing *Luxton v. Washington State Dep't of Veterans Affs.*, No. 3:23-CV-05238-DGE, 2025 WL 896658, at *16 (W.D. Wash. Mar. 24, 2025), *reconsideration denied*, No. 3:23-CV-05238-DGE, 2025 WL 2080575 (W.D. Wash. May 20, 2025) ("Accordingly, Risch's opinions are not relevant as they are not based on data that was accessible to the Department on October 5, 2021.")).

DSHS further argues that Strandquist has not identified any witness who can confirm what time period the exhibit covered, and notes that Dr. Kinlen and Wendy Long previously testified that they have no personal knowledge of the underlying data. *Id.* at 5. Thus, though DSHS is not seeking to exclude Dr. Risch as a witness, it maintains that "Exhibit 17 should be excluded and witnesses (including Dr. Risch) should be prohibited from offering data, calculations, or opinions based on Exhibit 17." *Id.* at 5, 7.

Strandquist argues that Exhibit 17 should not be excluded because it is a public record that the State provided in response to a public records request. Dkt. 247 at 2. Strandquist also asserts that Federal Rule of Evidence 401 provides that evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and it is of consequence to determining the action. *Id.* at 3. Since the exhibit shows the headcount of employees by state agency, Strandquist argues that Dr. Risch "was able to determine the risk of infection and transmission amongst the Headcount" and the "marginal increase in risk had the State accommodated" Strandquist. *Id.* Strandquist argues that because this evidence goes to the undue hardship analysis other federal courts have also considered, it should be admitted into evidence. *Id.* at 3–4.

Strandquist next asserts that Exhibit 17, "while published in January 2022, shows that there were only 82 ESH employees who ever sought an exemption from the vaccine requirement for religious reasons" and the "exemption request cutoff date was August 31, 2021." *Id.* at 4. Thus, Strandquist contends that he "may argue, and a jury may infer, that there was no material increase in religious exemption requests after the exemption request cutoff date." *Id.* Finally, Strandquist responds that Dr. Risch's trial testimony from the first trial was not based on the state's data from Exhibit 17, but rather from "published CDC and the State's Department of

Health data[]." *Id.* at 5. Since DSHS "makes no objection to the CDC and DOH data in its Motion," Strandquist maintains "it may be assumed that the underlying data is correct." *Id.*

As the Court discussed with the parties at oral argument, although Exhibit 17 is a state report that was released on January 12, 2022 (*see* Dkt. 227-1 at 2), it contains a mix of data, some of which is broken down by date, and some of which is reported on an aggregate basis as of the date of the report. For example, the first page of the exhibit contains vaccine verification data for all state employees broken down in two-week intervals from September through December of 2021. Dkt. 227-1 at 2. The second and third page, in contrast, contain vaccine verification data broken down by state agency, but aggregated as of the date of the report. *See id.* at 3–4. The same pattern occurs with respect to the report's data on religious exemption and accommodation requests. *See id.* at 5 (statewide data broken down by date); *id.* at 7 (agency-specific data aggregated). Furthermore, as Plaintiff points out, a reasonable inference can be drawn from the statewide religious exemption data that the number of religious exemptions and accommodations approved within each agency changed very little between October 18, 2021 (the date by which state employees were required to be vaccinated) and the end of the year.

For these reasons, Exhibit 17 contains at least some data on which Dr. Risch can reasonably rely in support of his opinions. Defendants' objections to that data go more to its weight than its admissibility and can be better addressed through cross-examination than exclusion of the entire exhibit. Accordingly, the motion is DENIED.

    **2.**     *Motion in Limine 2: Exclude any argument and evidence of COVID-19 related data and statistics created after Strandquist's exemption request and determination of reassignment.*

DSHS argues that in addition to "Exhibit 17 and data, calculations, and opinions based thereon, the Court should also exclude any testimony regarding or documents summarizing or analyzing Covid related data and statistics created after September 8, 2021, because DSHS could

not possibly have had access to such documents when making its decisions leading up to Plaintiff's separation on October 18, 2021." Dkt. 226 at 7. DSHS specifically asserts that during the first trial, Dr. Risch's testimony relied heavily on "after-the-fact data and statistics." *Id.* at 8. These include "reports that Eastern State Hospital may have made regarding the numbers of people that were getting infected between June of 2021 and March of 2022" and a "number of incident reports, marked as Exhibits 124 to 133 in the first trial, many of which involved incidents after October 18, 2021, to inform his opinions." *Id.*; *see* Dkt. 227-2 at 4–5, 7–8. DSHS argues that Dr. Risch also admitted to relying in part on a study in Vietnam published in November 2021 and a CDC publication that was published a day after Strandquist's separation on October 19, 2021. Dkt. 226 at 8; *see* Dkt. 227-2 at 15–17.

Strandquist argues that there is no reason why Dr. Strandquist "cannot corroborate and support his opinions with subsequent data that shows the projections he opines were or should have been made [] were, in fact, true." Dkt. 247 at 9. Additionally, Strandquist contends that Dr. Risch should be allowed to testify "to what the State should have been able to project based on the limited pre-October 18, 2021, data Plaintiff was able to obtain through public records act requests because the State did not comply with its discovery obligations." *Id.* Strandquist argues that Dr. Risch reviewed reports that clearly distinguished between time periods and thus the motion should be denied. *Id.*

As the Court discussed with the parties at the pretrial conference, Dr. Risch will be allowed to rely only on data that was arguably available to DSHS at the time it made its undue hardship decision. The Court will sustain objections to any exhibits or testimony that seek to introduce after-the-fact evidence. To the extent Dr. Risch discusses studies published after the undue hardship decision that were based on data arguably available to DSHS at the relevant time, that distinction must be made clear in his testimony. The Court will consider additional

objections on a question-by-question basis. The motion is thus GRANTED IN PART as explained above.

  **3.**  *Motion in Limine 3: Exclude evidence that DSHS did not require employees to receive the COVID-19 booster vaccine.*

  DSHS argues that during the first trial, Plaintiff's counsel tried to argue that requiring the COVID-19 vaccine was unreasonable or unnecessary because DSHS did not later require employees to receive the booster vaccine. Dkt. 226 at 9; *see* Dkt. 207 at 212. Since "evidence like this using post-decisional evidence and hindsight to second guess DSHS'[s] decision is irrelevant and prejudicial[,]" DSHS argues that this evidence should be excluded. Dkt. 226 at 9.

  Strandquist argues that DSHS's "decision to not accommodate and discharge its employees whose religion conflicted with their ability to comply with the vaccine requirement and allow its employees who only received the primary series to continue their public employment is extremely relevant." Dkt. 247 at 10. Strandquist contends that because DSHS "made this decision [not to require booster shots] despite the most current medical and scientific information showing the primary series efficacy was declining at a tremendous rate between June and July 2021," it is not prejudicial to admit evidence of DSHS's booster shot policy. *Id.*

  The Court agrees with DSHS that the State's later decision not to require employees to receive a COVID-19 booster vaccine is irrelevant to whether it failed to reasonably accommodate Dr. Strandquist when he objected to the vaccine mandate. FRE 401. Accordingly, the motion is GRANTED.

  **4.**  *Motion in Limine 4: Exclude Strandquist's testimony regarding other employees' alleged telehealth agreements during and after his separation on October 18, 2021.*

  DSHS moves to exclude: (1) "Evidence or argument regarding the schedules of other forensic evaluators at DSHS and whether or not they performed any of their duties via telehealth

after Plaintiff's separation on October 18, 2021"; (2) "Plaintiff's own testimony regarding any alleged agreement between DSHS and any other forensic evaluator wherein the forensic evaluator was permitted to perform 100% of their duties via telehealth from the onset of Covid to Plaintiff's separation on October 18, 2021"; and (3) "Plaintiff's own testimony about whether and how often any other forensic evaluators performed their duties via telehealth from the onset of Covid to Plaintiff's separation on October 18, 2021." Dkt. 226 at 9–10.

DSHS argues that this evidence should be excluded because Strandquist would not have personal knowledge of any work schedules after his employment was terminated, and he has already testified about his lack of personal knowledge. *Id.* at 10 (citing Fed. R. Evid. 602). DSHS asserts that Strandquist "attempted to provide testimony that other forensic evaluators working for DSHS were permitted to work 100% telehealth during the Covid period," but his testimony ultimately clarified that "he did not have the personal knowledge to make these blanket statements." *Id.* at 11; *see* Dkt. 207 at 113.

Strandquist argues that while it "may be correct that [he] lacks direct personal knowledge of what happened at ESH after he was discharged[,] . . . the jury can certainly infer from the fact that telehealth evaluations were possible on October 17, 2021, [and] that they remained possible on and after October 19, 2021." Dkt. 247 at 11. Specifically, Strandquist asserts that DSHS has only offered Dr. Kinlen's declaration that he was no longer a supervisor by 2021 and that none of the forensic evaluators had such an agreement with DSHS. *Id.* Strandquist argues, however, that "being a supervisor is far from the only possible way that a witness might have personal knowledge of a co-worker's employment contract[.]" *Id.* at 11–12. Strandquist testified in the first trial that Dr. Grant performed his evaluations exclusively using telemedicine during COVID and because DSHS has not presented evidence to suggest that he was mistaken, Strandquist contends that his testimony should not be excluded. *Id.* at 12–13.

Dr. Strandquist may only testify about matters for which he has personal knowledge. FRE 602. Because Dr. Strandquist has acknowledged that he lacks personal knowledge as to telework schedules allowed by DSHS after he left the agency, he may not testify about those arrangements. To the extent Dr. Strandquist has personal knowledge of telework arrangements allowed by DSHS before his employment was terminated, however, that information is relevant to whether DSHS could have accommodated him in his existing position. The motion is thus GRANTED IN PART and DENIED IN PART.

5.      *Motion in Limine 5: Exclude evidence and arguments about claims that have already been dismissed or claims that have never been brought.*

DSHS argues that because this case involves claims under Title VII and WLAD, "any references to the First Amendment religious protections—whether during trial testimony or during closing arguments—will waste time, confuse the jury, and unfairly prejudice Defendants without providing any countering probative value related to the issues in this lawsuit." Dkt. 226 at 14 (citing Fed. R. Evid. 403). DSHS asserts that courts routinely grant motions in limine prohibiting evidence and argument regarding dismissed claims and that this Court should do the same. *Id.* at 15 (citing *O'Neal v. State Farm Fire and Casualty Company*, Case No. C23-0232-KKE, 2024 WL 4593001 (W.D. Wash. Oct. 25, 2024); *Bell v. The Boeing Company*, Case No. 20-cv-01716-LK, 2022 WL 1607935 (W.D. Wash. May 20, 2022)).

Strandquist contends that he should not be barred from mentioning the principle of free exercise of religion because the jury will be instructed as to what his claims are and what the legal element for each claim is. Dkt. 247 at 13. Strandquist argues that "[w]hen a case touches on interests of such great weight and merit, it does the jury, and the interests of justice, a disservice to behave as though the question at hand were of no more moment than a third-rate burglary." *Id.* at 14. And because an "order excluding evidence of a Free Exercise Clause violation would lead

1    to endless bickering at trial over what testimony is or is not evidence that sort," Strandquist

2    maintains that the motion should be denied. *Id.* at 14.

3            The Court agrees with Strandquist that discussion during jury selection and attorney

4    argument about general principles of religious freedom is not an impermissible attempt to re-

5    litigate the constitutional claims that were dismissed at summary judgment. The existence of

6    Title VII and the WLAD's protection for religion flows from those same fundamental principles.

7    Accordingly, the motion is DENIED.

8            **6.**    *Motion in Limine 6: Exclude evidence and arguments about the general*
              *governmental transition pool ("GGTP") or a related 10-day "notice" period.*

9

10           DSHS seeks to exclude any references or argument that (1) "the GGTP is discriminatory

11   because it applies only to employees separated for a disability; and (2) that DSHS should have

12   paid Plaintiff for a 10-day 'notice' period." Dkt. 226 at 15. DSHS argues that the Court sustained

13   objections at the first trial to Strandquist's questioning of Wendy Long about the GGTP as

14   irrelevant to the claims in this lawsuit. *Id.* at 16; *see* Dkt. 227-2 at 27–28. Moreover, DSHS

15   argues that the 10-day notice period would not have applied to Strandquist because he did not

16   apply for a disability accommodation. Dkt. 226 at 16. Since permitting any such testimony "will

17   waste time, confuse the jury, and unfairly prejudice [DSHS] without providing any countering

18   probative value related to the issues in this lawsuit," DSHS maintains such evidence or argument

19   should be excluded. *Id.*

20           Strandquist contends that "GGTP is relevant, and evidence about it should be admitted,

21   because OFM guidance during the pandemic expanded the scope of the GGTP in a way that

22   made religious discrimination easier." Dkt. 247 at 15. Strandquist argues that the fact that

23   employees who were separated for medical reasons were entitled to priority hiring "is yet another

24   aspect of how DSHS discriminated against employees like Dr. Strandquist." *Id.*

The Court agrees with DSHS that this line of evidence and argument has no relevance to the two liability questions at issue in this trial: (1) whether DSHS offered Dr. Strandquist a reasonable accommodation in the form of a job transfer; and (2) whether it was an undue hardship to keep him in his original position. FRE 401. To the extent it has any minimal probative value, that is substantially outweighed by a danger of confusing the issues, misleading the jury, and wasting time. FRE 403. This motion is GRANTED.

7.      *Motion in Limine 7: Exclude evidence and argument about what other employers may have done to accommodate employees under the vaccine requirement.*

DSHS argues that during the first trial, in lieu of Ms. Brock's excluded testimony, Strandquist "attempted to testify at trial about the vaccine exemption and accommodation process with his new employer, Frontier Behavioral Health[.]" Dkt. 226 at 17. DSHS asserts that evidence "about what other employers, including Frontier, may have done or not done to accommodate employees subject to the vaccine mandate is irrelevant to DSHS's decisions, and permitting such testimony would only serve to waste time and cause jury confusion. *Id.* (citing Fed. R. Evid. 401 and 403). And since Frontier's decision to grant Strandquist a religious exemption occurred after his separation from DSHS, "it is not an apples to apples comparison of the information available to DSHS and Frontier at the time of their respective decisions." *Id.*

Strandquist argues that evidence of other employer's accommodation process is relevant because "if Frontier Behavioral Health could find a way to accommodate Dr. Strandquist himself, that has a tendency to show that accommodating Dr. Strandquist would not have imposed too severe a hardship on DSHS." Dkt. 247 at 16. Strandquist also argues that Ms. Brock's testimony was excluded based on reliability rather than relevance. *Id.* And even if the evidence does not meet the standard for expert testimony, Strandquist argues that it can still be introduced through lay testimony. *Id.*

Dr. Strandquist's factual testimony about his ability to find new employment, and how his religious objection to the vaccine was accommodated in his new employment, has at least some relevance to the presentation of his economic and non-economic damages. Dr. Strandquist should not stray, however, into offering impermissible legal opinions as to whether Frontier's willingness to accommodate him means that DSHS cannot prove its undue hardship defense. The motion is thus GRANTED IN PART.

**8.** *Motion in Limine 8: Exclude Strandquist's proposed Exhibit 18: "EEOC Response Letter."*

DSHS moves to exclude Strandquist's proposed Exhibit 18, *see* Dkt. 227-4, a March 9, 2022 letter from Lori Manning, Deputy Director of the Human Resources Division of DSHS, to the U.S. Equal Employment Opportunity Commission in response to Plaintiff's EEOC Charge[.]" Dkt. 226 at 18. DSHS argues that the document should be excluded because Lori Manning is not a proposed witness, and the letter constitutes inadmissible hearsay. *Id.* (citing Fed. R. Evid. 802). DSHS further argues that Strandquist seeks to admit this letter for the purpose of arguing that he requested shift-swapping as an accommodation even though there is no other evidence that he requested shift-swapping from DSHS during the accommodations process. *Id.* Because introducing the EEOC response letter "will waste time, confuse the jury, and unfairly prejudice Defendants without providing any countering probative value related to the issues in this lawsuit," DSHS argues that it should be excluded. *Id.* at 19.

Strandquist argues that Exhibit 18 is not hearsay because it qualifies as a statement made by a party opponent. Dkt. 247 at 17. Since "Ms. Manning was an agent of DSHS acting within the scope of her agency, and was authorized to make a statement on the subject of Strandquist's requests for accommodation," Strandquist asserts that the letter should not be excluded as hearsay. *Id.* (citing Fed. R. Evid. 801(d)(2)(C), (D)).

The Court agrees with Strandquist that the EEOC response letter is a statement of a party opponent and therefore is not hearsay under FRE 801(d)(2)(C) and (D). The motion is thus DENIED.

**9.**     *Motion in Limine 9: Exclude Strandquist's proposed Exhibit 7: "Site Plans."*

DSHS seeks to exclude Strandquist's proposed Exhibit 7, *see* Dkt. 227-5, a hand drawing labeled, "Site Plans." Dkt. 226 at 19. DSHS argues that there is no information about who authored the document, when the document was created, what the document is intended to represent, or why the document would be relevant in this trial. *Id.* DSHS asserts that during parties' conference, Plaintiff's counsel could not confirm who drew the document or where it came from, only to say that it was provided by Strandquist. *Id.* Because the document was not produced at discovery and prejudices DSHS's ability to prepare for trial, and otherwise fails to pass the "even the barest requirements under Federal Rules of Evidence for admissible evidence," DSHS argues it should be excluded. *Id.* at 19–20.

Strandquist contends that the document is relevant to show "that even if [he] had ever needed to visit his old office during the pandemic, after October 18, 2021, he could easily have avoided in-person contact with staff or patients." Dkt. 247 at 18. He asserts that this "particular sketch of ESH's layout at issue was drawn by Dr. Strandquist from memory," and should be admitted because a "picture will make the facts much more clear to the jury, than any number of words could ever do." *Id.* Finally, Strandquist contends the sketch is more probative than confusing and made from personal knowledge that can be authenticated by him. *Id.* at 19.

At trial, plaintiff's counsel may attempt to lay a foundation with Dr. Strandquist about the origins of the sketch in order to show it to the jury as an illustrative aid. FRE 107. The Court reserves until trial the decision whether to allow the jury to see the sketch and, if so, whether to admit the sketch as evidence. This motion is DENIED without prejudice.

1

## IV.     CONCLUSION

IT IS SO ORDERED.


Dated this 26th day of August, 2025.

Tiffany M. Cartwright
United States District Judge